HSBC BANK USA, N.A., Appellant,

v.

Ana MENDOZA and Tina
Zewde, Appellees.

No. 09–CV–525.

District of Columbia Court of Appeals.

Argued March 23, 2010.
Decided Dec. 23, 2010.

Robert A. Scott, for appellant.

Jeffrey A. Miller, Student Attorney, with whom Nathan A. Neal, Supervising Attorney, was on the brief, for appellee Mendoza.*

Before GLICKMAN, THOMPSON, and OBERLY, Associate Judges.

GLICKMAN, Associate Judge:

■ HSBC Bank USA, N.A. ("HSBC") appeals from the denial of its application pursuant to Superior Court Civil Rule 24(a)(2) to intervene as of right in a suit for breach of a contract to sell real property.[1] By intervening, HSBC seeks to protect its rights under a deed of trust and an equitable lien on the property. We hold that leave to intervene should have been granted.

## I.

The litigation before us concerns the disposition of property located at 526 Tuckerman Street in Northwest Washington, D.C. The house at that address was appellee Ana Mendoza's residence. In April 2004, appellee Tina Zewde sued Mendoza in Superior Court for breaching a contract to sell the house. In her complaint, Zewde requested specific perform-

ance of the contract or, in the alternative, monetary damages.

At the time the suit was filed, Mendoza had a pre-existing mortgage on the Tuckerman Street property. In June 2004, she refinanced that mortgage by borrowing $170,000 from Chase Manhattan Mortgage Corp. ("Chase") and executing a deed of trust on the property in Chase's favor to secure the loan. Chase promptly recorded its deed of trust in the land records of the District of Columbia. When it did so, Chase may have been unaware of Zewde's lawsuit to compel the sale of the property, and it was not on constructive notice of that suit, because Zewde did not file a notice of *lis pendens* until several months later, in March 2005.[2]

The suit still was pending in September 2007, when Mendoza allegedly executed a deed conveying her Tuckerman Street property to one Juan Rodriguez for $370,000. Rodriguez recorded that deed in the District of Columbia land records. To finance his purchase of the property, Rodriguez borrowed $370,000 from HSBC. The loan was secured by a deed of trust signed by Rodriguez and also recorded in the land records. HSBC professes to have been unaware of the *lis pendens* or the litigation between Zewde and Mendoza when it made the loan and took its security interest in the property.

From the proceeds of HSBC's loan to Rodriguez, $174,807.09 was paid to Chase to release its deed of trust encumbering the Tuckerman Street property. Chase duly recorded a release of its lien and sent

---

* Appellee Zewde did not file a brief or present oral argument.

1. The denial of leave to intervene as of right is an appealable final order. *McPherson v. District of Columbia Hous. Auth.*, 833 A.2d 991, 994 (D.C.2003).

2. *Lis pendens* is a "notice, recorded in the chain of title to real property, required or permitted in some jurisdictions to warn all persons that certain property is the subject matter of litigation, and that any interests acquired during the pendency of the suit are subject to its outcome." BLACK'S LAW DICTIONARY 1015 (9th ed. 2009).

the release to Mendoza as the putative seller of the property. In addition, according to the settlement statement from the HSBC–Rodriguez loan closing, another creditor of Mendoza received $12,300.00 of the loan proceeds, and $160,713.21 was disbursed to Mendoza herself.

The validity of Rodriguez's title to the Tuckerman Street property and the deed of trust he granted HSBC is controverted and unresolved. Mendoza, who apparently cannot read or write English, claims that Rodriguez defrauded her; that she did not knowingly sign the deed conveying her property to him; and that she received none of the money that was to have been paid to her from the proceeds of HSBC's loan. She acknowledges that Chase was paid off, but claims she knew nothing of Rodriguez's transactions before Chase notified her that it had released its lien. Mendoza also represents, without contradiction, that Rodriguez disappeared after the loan closing and that the parties have been unable to find him.

Not long after he received the HSBC loan, Rodriguez defaulted on his payments, and the trustees under the deed of trust he provided HSBC commenced a foreclosure action against the Tuckerman Street property. The foreclosure was scheduled to take place on April 3, 2008, but Zewde and Mendoza jointly applied in their pending case in Superior Court for a temporary restraining order ("TRO") to prevent it. That application was served on the trustees. The court granted, and subsequently extended, the TRO, and the trustees cancelled the foreclosure sale.

HSBC, which had not been a party to the TRO proceedings, moved pursuant to Civil Rule 24(a)(2) to intervene as of right in the lawsuit in order to protect its interest in the Tuckerman Street property. In its motion and accompanying pleading,[3] HSBC asserted it had both a security interest in the property granted by its putative owner of record, Rodriguez, and an equitable lien on the property arising, under principles of equitable subrogation,[4] from its payment of $174,807.09 to discharge the pre-existing encumbrance held by Chase in return for an encumbrance of equivalent priority. HSBC acknowledged that its deed of trust might be contingent (assuming the validity of the earlier-recorded notice of *lis pendens*, which HSBC did not challenge) on the outcome of Zewde's suit against Mendoza. But HSBC argued that its equitable lien was not contingent on that outcome, because it had the same priority as the Chase lien it replaced, which Chase had recorded before Zewde recorded her *lis pendens*. HSBC argued that its ability to protect its interest in the property had been impaired already by the TRO and could be impaired further when the court entered a final judgment in the case.[5] Intervention was necessary, HSBC contended, because neither Zewde nor Mendoza could be counted on to represent its interests; indeed, HSBC pointed out,

---

3. *See* Super. Ct. Civ. R. 24(c) ("The motion [to intervene] shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought.").

4. "Subrogation simply means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against the defendant." Dan B. Dobbs, Law of Remedies § 4.3, at 404 (2d ed. 1993).

5. "[S]hould this Court enter judgment determining rights to the Property as between Ms. Zewde and Ms. Mendoza," HSBC explained, "the rights of the record property owner Mr. Rodriguez and record lienholder HSBC will necessarily be affected. Should another Court enter judgment determining rights to the Property as between Ms. Mendoza, Mr. Rodriguez, and HSBC, inconsistent obligations could result."

they had moved to enjoin it from foreclosing on the Tuckerman Street property and each of them would benefit from taking title to that property free of encumbrance. Accordingly, in its proposed counterclaim and crossclaim against Zewde and Mendoza, HSBC sought a declaration of the validity of its deed of trust (in the principal amount of $370,000) or, in the alternative, of its equitable lien (in the amount of $174,807.09), among other relief.

In opposition, Mendoza argued that HSBC lacked a significantly protectable interest to justify intervention because, under the doctrine of *lis pendens,* any security interest it had in the Tuckerman Street property was subject to and contingent on the outcome of the lawsuit.[6] Furthermore, she argued, if the court were to allow HSBC to intervene, Rodriguez would become an indispensable party, and the entire action would have to be dismissed because he could not be found and served with process.

In a two-sentence order entered on May 5, 2009, the court denied HSBC leave to intervene on the ground that it "is not an indispensable party and [it] has legal rights which will not be ripe until the litigation in this matter has been resolved." The court did not address HSBC's claim to a non-contingent equitable lien or the significance of Rodriguez's absence. HSBC immediately appealed the ruling to this court.

## II.

■ Civil Rule 24(a)(2) provides:

Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The Rule thus sets out four "factors that a trial court must consider in determining whether to grant or deny a motion to intervene" as of right: "timeliness, interest, impairment of interest, and adequacy of representation."[7] When these criteria are satisfied, intervention "*shall* be permitted."[8] Moreover, our cases have reiterated that Rule 24(a)(2) "should be liberally interpreted."[9] In other words, "[a]ny doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action."[10] Where the trial court's ruling on a motion to intervene as of right

---

6. Regarding HSBC's claim to have obtained a non-contingent equitable lien, Mendoza suggested in passing, without explanation, that the lien "appear[ed] to be ... against [her] personally, and not an interest in the Property." Mendoza has abandoned this contention on appeal.

7. *Jones v. Fondufe,* 908 A.2d 1161, 1162–63 (D.C.2006) (internal quotation marks and citations omitted).

8. *Id.* at 1163 ("The language of the rule is mandatory....").

9. *McPherson v. District of Columbia Hous. Auth.,* 833 A.2d 991, 994 (D.C.2003) (internal quotation marks and citations omitted).

10. *Federal Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.,* 983 F.2d 211, 216 (11th Cir.1993). As our local rule derives from and substantially mirrors the corresponding federal rule of civil procedure, "we may look to federal court decisions interpreting the federal rule as persuasive authority in interpreting [the local rule]." *Goldkind v. Snider Bros., Inc.,* 467 A.2d 468, 472 (D.C. 1983) (internal quotation marks and citation omitted).

involves a question of law, appellate review is *de novo,* while " 'to the extent [the ruling] is based on questions of fact, it is ordinarily reviewed for abuse of discretion.' " [11]

Turning to the relevant factors, there is no dispute as to the timeliness of HSBC's application. We therefore pass on to the other three criteria, each of which is disputed.

■ The first question is whether HSBC claims a cognizable "interest" in the Tuckerman Street property that is the subject of the action. "[W]e have adopted a 'broad reading' of the word 'interest' because it is 'primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.' " [12] Nonetheless, "Rule 24(a) impliedly refers not to *any* interest the applicant can put forward, but only to a legally protectable one." [13] HSBC asserts two interests in the property: (1) its recorded deed of trust in the principal amount of $370,000, and (2) an equitable lien in the amount it paid to satisfy the Chase mortgage, *i.e.,* $174,807.09.

The trial court's determination that the first asserted interest was not "ripe" enough to support intervention is defensible. Rodriguez recorded his deed to the Tuckerman Street property and HSBC recorded its deed of trust from Rodriguez two years after Zewde's *lis pendens* filing. That filing put them both on constructive notice of the pending litigation between Zewde and Mendoza over the Tuckerman Street property. Rodriguez and HSBC therefore took their respective interests in the property subject to the rights of Zewde and Mendoza as finally determined in the litigation. [14] The outcome of that litigation may be a judgment awarding specific performance of the sale of the property to Zewde, thereby invalidating Rodriguez's and HSBC's contingent interests. As HSBC's interest based on the deed of trust is contingent on the outcome of the litigation, and HSBC arguably has no right to protect its interest from that outcome, the interest may be insufficient to support HSBC's intervention. [15] Howev-

---

**11.** *McPherson,* 833 A.2d at 994 (quoting *Mova Pharm. Corp. v. Shalala,* 329 U.S.App.D.C. 341, 355, 140 F.3d 1060, 1074 (1998)).

**12.** *Jones,* 908 A.2d at 1163 (quoting *McPherson,* 833 A.2d at 994) (other citations omitted). *Cf. Vale Props., Ltd. v. Canterbury Tales, Inc.,* 431 A.2d 11, 14 (D.C.1981) ("While that interest must be 'significantly protectable' to require intervention, we have eschewed any attempt to define precisely the nature of the interest contemplated by the rule," in favor of "employ[ing] the interest test as a 'practical guide' to the handling of lawsuits.") (internal citations omitted).

**13.** *Mova Pharm.,* 329 U.S.App.D.C. at 355, 140 F.3d at 1074 (internal quotation marks and citation omitted).

**14.** *See generally First Atl. Guar. Corp. v. Tillerson,* 916 A.2d 153, 156–58 (D.C.2007).

**15.** *Cf. Maryland–Nat'l Capital Park & Planning Comm'n v. Town of Washington Grove,* 408 Md. 37, 968 A.2d 552, 588 (2009) (interpreting case law "not as establishing absolute bars to participation by persons receiving potential interests in real property *pendente lite,* but as preventing, regardless of the doctrine of *lis pendens,* persons from participating as parties unnecessarily in actions in which their interests in the property in question derive entirely from transactions subsequent to, and completely independent of, the transaction called into question in the original action, such that those persons fail to add any substantive interests or claims of their own that relate to the original transaction that are not represented already by the original parties"); *Wells Fargo Bank v. Daniels,* No. 1:05–CV–2573, 2007 WL 3146085, at *3 (N.D.Ohio, Oct. 25, 2007) (denying intervention because the interest acquired post-*lis pendens* was "not direct, substantial, or significantly protectable" due to its contingent nature); *Fed. Deposit Ins. Corp. v. Engle,* 524 F.2d 1339 (9th Cir.1975) (granting intervention, with little

er, we need not decide whether the contingent security interest granted to HSBC by Rodriguez is sufficient to support intervention, because the equitable lien on the Tuckerman Street property that HSBC claims is a non-contingent interest that satisfies the requirements of Rule 24(a)(2).

■ Under the doctrine of equitable subrogation, a lender who pays off a pre-existing mortgage and takes a new mortgage as security for the loan will be subrogated to the rights of the first mortgagee as against any intervening lienholders, even if the lender is on constructive notice of the existence of the junior liens.[16] In other words, the lender steps into the shoes of the mortgagee whom it has paid off and receives that mortgagee's priority over subsequent liens. The subrogation extends to the amount paid to satisfy the earlier indebtedness.[17] Under these principles, when HSBC paid off the Chase mortgage in full, it assumed Chase's position in the chain of title to the Tuckerman Street property, acquiring an equitable lien having the same priority vis-à-vis other encumbrances that the Chase mortgage had. And because Chase recorded its deed of trust before Zewde recorded her *lis pendens* notice, HSBC's equitable lien has priority over Zewde's claim and hence

is not contingent on the outcome of the lawsuit between Zewde and Mendoza. A non-contingent equitable lien on property that is the subject of a lawsuit is a sufficiently protectable interest for purposes of intervention as of right under Rule 24(a)(2).[18]

■ We also are persuaded that HSBC has demonstrated that the disposition of the lawsuit between Zewde and Mendoza may as a practical matter impair or impede its ability to protect its equitable interest in the Tuckerman Street property. " 'To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal.' "[19] To carry its burden in this regard, HSBC relies chiefly on the impairment it already has suffered: the trial court's entry, in its absence, of the TRO that prevented it from foreclosing on the property.[20] Although that TRO is no longer in effect, and it was entered when HSBC was attempting to foreclose on the basis of its deed of trust rather than its equitable lien, HSBC argues that its ability to institute foreclosure proceedings continues to be stymied, as a practical matter, as a result of the trial court's TRO ruling and its effect on the trustees'

analysis, to movants who acquired an interest in the disputed property after a *lis pendens* filing).

16. *Eastern Savings Bank v. Pappas*, 829 A.2d 953, 955–59 (D.C.2003).

17. *Id.* at 960.

18. *See, e.g., WMATA v. Reid*, 666 A.2d 41, 44 (D.C.1995) (affirming employer's right to intervene in employee's negligence action against third party in order to protect its equitable lien on any recovery by employee in the action); *see also Calvert Fire Ins. Co. v. Environs Dev. Corp.*, 601 F.2d 851, 857–58 (5th Cir.1979) (equitable lien on insurance proceeds); *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir.1970) (tax lien

asserted against funds claimed in suit); *Sears Roebuck & Co. v. IPofA Salina Cent. Mall, LLC*, No. 08–4125–SAC, 2009 WL 1664614, at *4, 2009 U.S. Dist. LEXIS 50187, at *15 (D.Kan. Jun. 15, 2009) (equitable lien on mall subject to foreclosure action).

19. *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1253 (10th Cir.2001) (quoting *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir.1999)).

20. Although unusual, a court may bind non-parties to the terms of an injunction to preserve its ability to render a judgment in a case over which it has jurisdiction. *Herrlein v. Kanakis*, 526 F.2d 252, 255 (7th Cir.1975).

willingness to act. Essentially, HSBC fears that in its absence, the parties would succeed in urging the trial court to enjoin any future foreclosure attempt. Lending some credence to that concern, Mendoza has asserted on appeal that she anticipates "assert[ing] appropriate defenses" against enforcement of the equitable lien, "including, but not limited to: (1) mistake of fact, (2) undue influence, and (3) violations of the D.C. Consumer Protection Procedures Act." [21] Consequently, whether or not the ultimate disposition of the lawsuit will result in a judgment prejudicial to HSBC's interests,[22] the impairment of HSBC's ability to protect its interest in the Tuckerman Street property by enforcing its equitable lien is being impeded in the interim. This is enough, we conclude, to support its intervention as of right.[23] Indeed, appellee conceded at oral argument that Chase would have been entitled to intervene in the litigation based on its mortgage had that mortgage not been paid off. In seeking to protect its equitable lien, HSBC stands in Chase's shoes.

The final factor bearing on an application to intervene as of right— whether the applicant's interest is adequately represented by existing parties— "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." [24] This is true even if there is a significant overlap between the would-be intervenor's interest and that of a party: "if the [movant]'s interest is similar to, but not identical with, that of one of the parties, a discriminating judgment is required on the circumstances of the particular case, although intervention ordinarily should be allowed unless it is clear that the party will provide adequate representation for the [movant]." [25] In this case, no existing party supports HSBC's claims of a security interest in the property; Zewde and Mendoza both opposed HSBC's effort to foreclose and would be expected to do so in the future. That is sufficient to support HSBC's intervention. Even where the circumstances of a case make for a close decision, we err on the side of permitting intervention when no existing party favorably views the movant's interest.[26]

Lastly, Mendoza contends that HSBC's intervention would not serve the goal of judicial economy because it would necessitate adding Rodriguez as an indispensable party under Civil Rule 19,[27] and the existing parties' alleged inability to locate Rodriguez and serve him with process would oblige the trial court to dismiss

21. Brief of Appellee Mendoza at 6.

22. Although HSBC does assert a need to intervene to ensure that its security interest is respected in any final order the court may enter concerning title to the property, it has not fleshed out the danger enough for us to assess its concrete reality.

23. *See Jones v. Fondufe*, 908 A.2d 1161, 1165 (D.C.2006) ("In light of the purpose of the rule, we agree that it is not enough to deny intervention under 24(a)(2) because applicants may vindicate their interests in some later, albeit more burdensome, litigation.") (internal quotation marks, brackets, and citations omitted).

24. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972).

25. 7C Charles Alan Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure Civil § 1909, at 395 (3d ed. 2007).

26. *Cf. Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1125 (5th Cir.1970) (affirming government's intervention because no existing party to the suit viewed the government's tax lien favorably).

27. Super. Ct. Civ. R. 19.

the lawsuit. This contention is unpersuasive. In the first place, the absence of a party who should be joined if it is feasible to do so does not necessarily mean the action cannot proceed among the existing parties before the court. Civil Rule 19(b) commits that question to the trial judge's discretion.[28] At this stage, therefore, the issues surrounding the claimed need for Rodriguez's joinder and his alleged disappearance are properly for the trial court, which has not yet considered them, rather than for this court. Moreover, the premise that Rodriguez's disappearance precludes his joinder as a party because personal service of process cannot be accomplished also appears to be mistaken. District of Columbia law permits service of process by publication in lieu of personal service upon a defendant who cannot be found in "actions that have for their immediate object the enforcement or establishment of any lawful right, claim, or demand to or against any real or personal property within the jurisdiction of the court."[29]

### III. Conclusion

HSBC satisfies the test for intervention as a matter of right. HSBC's application was not untimely; it claims a valid equitable interest in the Tuckerman Street property that pre-dates the *lis pendens* filing; as a practical matter, the lawsuit impedes HSBC's efforts to foreclose on the property and thereby protect its interest; and HSBC's interest is not adequately represented by the existing parties to the lawsuit. Accordingly, the denial of the motion to intervene is

*Reversed.*

---

**28.** *See Raskauskas v. Temple Realty Co.,* 589 A.2d 17, 22–24 (D.C.1991).

**29.** D.C.Code § 13–336(b)(8) (2001).