ONEWEST BANK, FSB, Appellant,

v.

Stephanie S. MARSHALL, Abbie Scott, and Renaud Scott, Appellees.

OneWest Bank, FSB, Appellant,

v.

Stephanie S. Marshall, Personal Representative of the Estate of James Clark Scott III, Appellees.

Nos. 10–CV–190, 10–PR–1144.

District of Columbia Court of Appeals.

Argued March 2, 2011.
Decided March 31, 2011.

Michael S. Steadman, Jr., with whom Michael N. Russo, Jr., Annapolis, MD, was on the brief, for appellant.

Bruce A. Marshall for appellees Stephanie S. Marshall and Abbie Scott.

Before REID and FISHER, Associate Judges, and KRAVITZ, Associate Judge of the Superior Court of the District of Columbia.*

REID, Associate Judge:

In these consolidated appeals appellant, OneWest Bank, FSB ("OneWest Bank"), challenges the Superior Court Civil Division's dismissal of its verified complaint for

* Sitting by designation pursuant to D.C.Code § 11–707(a) (2001).

declaratory judgment; the court granted the Super. Ct. Civ. R. 12(b)(6) motion to dismiss filed by appellee Stephanie S. Marshall, Personal Representative of the Estate of James C. Scott. OneWest Bank also appeals the Superior Court Probate Division's order denying its motion to require Ms. Marshall to distribute Mr. Scott's estate's one-third interest in the Clay Street property to his wife, Abbie Scott.

We are constrained to hold that the Civil Division's Rule 12(b)(6) dismissal of OneWest Bank's declaratory judgment action against Ms. Marshall was improper because the bank's complaint alleged the elements of legally viable claims for declaratory and equitable relief (No. 10–CV–190). Furthermore, to the extent that the Civil Division intended to apply its Rule 12(b)(6) dismissal also to OneWest Bank's claims against appellees Abbie Scott and Renaud Scott by declaring two deeds of trust executed by them void, that declaration reflected a misapprehension of the law. In addition, because the Probate Division, in denying OneWest Bank's motion (to require distribution of an estate asset), believed it was bound by the Civil Division's ruling, we would be constrained to vacate the Probate Division's order, assuming that appeal is properly before us, but given our disposition of the Civil Division orders, we see no need to address that appeal at this point (No. 10–PR–1144).

## FACTUAL SUMMARY

The records in these appeals reveal the following. In 1991, Renaud Dewey Scott and Deborah James Scott conveyed property located at 3435 Clay Street, in the Northeast quadrant of the District of Columbia, to James Scott, Abbie Scott, and Renaud Dewey Scott as tenants in common, each with a one-third interest in the property. James Scott died years later,

on November 30, 2006. After Mr. Scott died, his one-third interest in the Clay Street property passed to his estate. His daughter, Ms. Marshall, was not appointed as his personal representative until November 26, 2008.

Earlier, on January 26, 2007, Renaud Scott and his mother, Abbie Scott, obtained a $189,750 loan from Surepoint Lending, using the Clay Street property as collateral. About five months later, that loan was refinanced; Renaud and Abbie Scott executed a deed of trust to UMG Mortgage, LLC for $208,000, of which $192,737.44 went to Surepoint to pay off Renaud and Abbie Scott's outstanding mortgage loan. The promissory note for the new loan with UMG was signed only by Renaud Scott.

Ownership of UMG assets changed hands and the Federal Deposit Insurance Corporation ("FDIC") eventually took over the assets from IndyMac Bank and sold them to OneWest Bank on March 19, 2009, including the deed of trust signed by Renaud and Abbie Scott, and the promissory note signed by Renaud Scott. After default on the loan relating to the Clay Street property, OneWest Bank's predecessor, IndyMac Bank, filed a claim against the Estate of James Scott on April 1, 2009. Ms. Marshall denied the claim on May 5, 2009.

In response to the denial of the claim filed by its predecessor, OneWest Bank lodged its verified complaint for declaratory judgment and equitable relief in the Civil Division on June 15, 2009, against Ms. Marshall, and Renaud and Abbie Scott. OneWest Bank sought to: (1) show that proceeds from the UMG loan were used to pay off the Surepoint loan obtained by Renaud and Abbie Scott; (2) affirm its first lien position as successor in interest; and (3) establish that James Scott, as holder of a one-third interest in the Clay

Street property, benefitted from the loan and hence was a "borrower."

Renaud and Abbie Scott filed separate verified answers in July 2009; and Ms. Marshall moved to dismiss OneWest Bank's declaratory judgment action against the estate in September 2009, on the ground that the complaint did not state a claim for which relief could be granted. She relied on D.C.Code § 20–105, which provides that "all property of a decedent . . . upon the decedent's death, shall pass directly to the personal representative, who shall hold the legal title for administration and distribution of the estate." Ms. Marshall also filed an amended answer and a counterclaim asserting that the UMG loan was void *ab initio* under § 20–105, and demanding $80,000 for the improper transfer of the estate's one-third interest in the Clay Street property.

Approximately two weeks later, OneWest Bank filed an omnibus pleading which included a motion for summary judgment, a motion to dismiss Ms. Marshall's counterclaim, and an opposition to Ms. Marshall's motion to dismiss. The Civil Division, through the Honorable Jeanette Clark, denied OneWest Bank's motion for summary judgment without prejudice on November 23, 2009, on technical grounds—failure to file separate pleadings under Super. Ct. Civ. R. 12–I(e) and (k). On the same day, Judge Clark construed OneWest Bank's motion to dismiss Ms. Marshall's counterclaim as a motion for summary judgment, and asserted that:

> In light of the genuine issues of material facts in dispute, which include, but are not limited to, the following: (1) whether One WestBank is a successor-in-interest to UMG Mortgage, LLC, and (2) whether [OneWest Bank] has a valid

claim or interest in the subject property, the Motion is denied.

Two weeks later, Judge Clark granted Ms. Marshall's Rule 12(b)(6) motion to dismiss OneWest Bank's verified complaint, in light of D.C.Code § 20–105. Judge Clark declared that no opposition had been filed, apparently concluding that she could not consider the omnibus pleading as an opposition because it was not properly filed as a separate pleading. She further determined, in part, that:

> [Renaud Scott and Abbie Scott] refinanced the [Clay Street] property before a personal representative had been appointed for the estate of James C. Scott, who died on November 30, 2006. The two [d]eeds of [t]rust are void and should not have been executed before the personal representative was appointed and represented the estate of James C. Scott's position regarding the two transactions. Therefore, the claim brought against Defendant Marshall is dismissed for failure to state a claim. *See* Super. Ct. Civ. R. 12(b)(6).

The court indicated that its dismissal of OneWest Bank's claim against Ms. Marshall did not dispose of her counterclaim against OneWest Bank.[1]

Subsequently, OneWest Bank filed a motion to alter or amend judgment, or for reconsideration on December 17, 2009. In part, OneWest Bank asserted that the court "void[ed] [d]eeds of [t]rust executed by [d]efendants Renaud Scott and Abbie Scott as invalid which granted relief to a nonmoving party and misapplied the law of the District of Columbia." The bank maintained that "[a]s a matter of law, . . . the Deeds of Trust cannot be voided in the manner set forth in [Judge Clark's] [o]rder". The Honorable Erik Christian denied the motion, essentially because

---

1. The parties, including Renaud and Abbie Scott, entered a joint stipulation dismissing Ms. Marshall's counterclaim without prejudice on January 21, 2010.

"OneWest Bank provided neither new information nor law that persuaded [him] to change [Judge] Clark's" order.

With regard to the Probate Division proceeding, OneWest Bank lodged a motion in May 2010 to require distribution of Mr. Scott's one-third share of the Clay Street property to Abbie Scott. In her June 2010 opposition to the motion, Ms. Marshall contended that OneWest Bank lacked standing because it is not an heir, legatee or a valid claimant, and because the Civil Division had voided the deeds of trust on which OneWest Bank had based its claim. The Honorable Rhonda Reid Winston determined that "[if] Abbie Scott acquires the remaining one-third interest in the [Clay Street] [p]roperty—combined with a valid assignment to [OneWest Bank]—her interest would inure to [OneWest Bank], thus making [the bank] an interested party." However, because of the Civil Division ruling, she concluded that "the doctrine of after-acquired title cannot apply because the [d]eed of [t]rust is void by virtue of the Civil Division's ruling voiding the [d]eed of [t]rust." Judge Winston reasoned that "[l]egally, ... there is no assignment because the [d]eed of [t]rust is void," and hence, OneWest Bank ... lacks standing."

## ANALYSIS

OneWest Bank argues that although Ms. Marshall's motion to dismiss "sought nothing more than a dismissal of the [c]omplaint brought against the James Scott [e]state for failure to state a claim against *that party*" (emphasis in original) the Civil Division, instead, "appears to have entered *sua sponte* adjudication on the validity of the Surepoint [d]eed of [t]rust and the OneWest [d]eed of [t]rust notwithstanding that the validity of these [d]eeds of [t]rust

(as against the interests of Renaud and Abbie Scott) was never before the trial court in the first place." The bank complains that it had no notice that the Civil Division would dispose of its claims against Renaud and Abbie Scott summarily by voiding the deeds of trust that they admitted signing. OneWest Bank asserts that the Civil Division's ruling constituted error as a matter of law because the deeds of trust "encumber[ed] Renaud Scott and Abbie Scott's interests in the [Clay Street] [p]roperty without regard to the interests held by the James Scott Estate." Furthermore, the bank maintains that no violation of D.C.Code § 20–105 occurred because there was no non-judicial transfer of James Scott's one-third interest in the Clay Street property. The bank contends, in essence, that it stated legally viable claims and the Civil Division erred by dismissing its verified complaint.

Ms. Marshall argues that OneWest Bank lacks standing to bring its claim; she maintains that: "In light of the trial court's concerns about One West[ ] [Bank's] standing [as reflected in its denial of OneWest Bank's motion to dismiss Ms. Marshall's counterclaim], it appears that this appeal is premature and should be dismissed."[2] Moreover, she declares that "OneWest [Bank] must show that it is the beneficiary of a valid assignment of both the UMG promissory note and the UMG deed of trust, or [it] lack[s] standing to enforce the UMG deed of trust which is the subject of this legal action." Furthermore, Ms. Marshall claims that the trial court's dismissal of OneWest Bank's verified complaint was proper, essentially because "[t]he failure to obtain the signature of James Scott's Personal Representative and the failure to reflect James Scott's interest on the [d]eed, alienating the estate's one-third interest in the Clay Street

---

2. A motions' division determined that this court has jurisdiction over the appeal.

property, violated the express statutory language of D.C.Code § 20–105."

We are guided by the following legal principles. "Standing is a threshold jurisdictional question which must be addressed prior to and independent of a party's claims." *Grayson v. AT & T Corporation*, 15 A.3d 219, 229 (D.C.2011) (en banc) (internal quotation marks and citation omitted). "To establish standing, a plaintiff must present an injury that is concrete, particularized, and actual or imminent.... [T]he critical question is whether ... [the plaintiff] has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of [the] court['s] jurisdiction." *Horne v. Flores*, —— U.S. ——, 129 S.Ct. 2579, 2592, 174 L.Ed.2d 406 (2009) (internal quotation marks and citations omitted).

We review the dismissal of a complaint under Super. Ct. Civ. R. 12(b)(6) *de novo*. *Drake v. McNair*, 993 A.2d 607, 615 (D.C.2010). "In reviewing the complaint, the court must accept its factual allegations and construe them in a light most favorable to the non-moving party." *Chamberlain v. American Honda Fin. Corp.*, 931 A.2d 1018, 1023 (D.C.2007) (citation omitted). "However, [f]actual allegations must be enough to raise a right to relief above the speculative level ...."; and "dismissal under Rule 12(b)(6) is ap-

propriate where the complaint fails to allege the elements of a legally viable claim." *Id.* (internal quotation marks and citations omitted).

Here, we have no doubt that OneWest Bank's complaint sufficiently alleges that it has standing. It has alleged, in essence, that it has a security interest in the Clay Street property through the deed of trust executed by Renaud and Abbie Scott with OneWest Bank's predecessor in interest; that because Renaud and Abbie Scott paid off the Surepoint mortgage loan with funds obtained from OneWest Bank's predecessor in interest (UMG/IndyMac), OneWest Bank has assumed the first lien position as to the encumbrance on the Clay Street property; that an issue has arisen as to whether OneWest Bank has the first lien position that its predecessor in interest had; and that there is a danger that if it does not, its security interest will be non-existent or diminished in value.[3] Under these circumstances, OneWest Bank has alleged "an injury that is concrete, particularized, and actual or imminent" and it has "a personal stake in the outcome of the controversy." *Horne, supra,* 129 S.Ct. at 2592.

We next examine whether the Civil Division properly dismissed OneWest Bank's complaint in response to Ms. Marshall's Rule 12(b)(6) motion.[4] Ms. Mar-

---

**3.** "A mortgage is a conveyance or retention of an interest in real property as security for performance of an obligation. A mortgage is enforceable whether or not any person is personally liable for that performance." Restatement (Third) of the Law of Property, § 1.1.

**4.** OneWest Bank complains that the Civil Division treated Ms. Marshall's motion to dismiss as unopposed even though the Bank filed a timely opposition to the motion. The record reflects that OneWest Bank did file a timely opposition to the motion, albeit within an omnibus, rather than a separate, filing. We conclude that the Civil Division's treat-

ment of the motion as unopposed in these circumstances was an abuse of discretion. Courts avoid 'the extreme remedy' which precludes consideration of the substance of a party's filing and the resolution of an issue on its merits, especially where the substantial rights of the opposing party are not affected. *See Rubin v. Lee,* 577 A.2d 1158, 1161 (D.C. 1990) ("the clear trend in this jurisdiction is to avoid the extreme remedy ... where there is no resulting prejudice ...." (citation omitted)); *Rieser v. District of Columbia,* 188 U.S.App.D.C. 384, 392, 580 F.2d 647, 655 (1978) ("The court at every stage of the pro-

shall's motion only involved James Scott's estate. Our task, then, is to determine whether OneWest Bank stated the elements of a legally viable claim against the estate and whether the allegations of its complaint, which we must accept as true, were sufficient "to raise a right to relief above the speculative level." *Chamberlain*, 931 A.2d at 1023 (internal quotations and citation omitted). When we construe the allegations in the light most favorable to OneWest Bank, we conclude that OneWest Bank has stated the elements of legally viable equitable claims (equitable lien or equitable title, and equitable subrogation).

Paragraph 13 of the complaint indicates that the Clay Street property "was owned by James Scott, Renaud Scott, and Abbie Scott." Paragraph 19 avers "that the monies loaned by OneWest[ ] [Bank's] predecessor in interest were actually loaned to and for the benefit of James Scott and to and for James Scott's interest in the property, in addition to Renaud Scott and Abbie Scott, as the monies loaned were for the [Clay Street] [p]roperty." Moreover, Paragraph 20 alleges "that the monies loaned by One West[ ] [Bank's] predecessor in interest were used to improve and maintain the [Clay Street] [p]roperty and thus benefitted all of the title owners of the [Clay Street] [p]roperty, including James Scott, Renaud Scott and Abbie Scott."

In Count II of its complaint ("Declaratory Judgment—Equitable Lien"), OneWest Bank states, in paragraph 27, that [after the death of James Scott] "UMG provided Renaud Scott and Abbie Scott with refinance funding in the total amount of $208,000.00 for the [Clay Street] [p]roperty." With the deed of trust that secured the UMG loan, UMG intended to and did occupy a first lien position with respect to any other encumbrance. Paragraph 28 alleges that OneWest Bank stepped into the first lien position of its predecessor in interest: "[E]quity requires that this [c]ourt exercise its equitable powers and declare that as of July 3, 2007, UMG, and its successor in interest, One West [Bank] holds a first lien position against the [Clay Street] [p]roperty...."

Equity recognizes that "where ... the intention to hold and charge a particular interest or estate as security for the payment of a debt or other obligation is clearly manifested in writing [here, through the UMG/IndyMac/OneWest Bank deed of trust], but frustrated simply through some default of form or in procedure, an equitable lien upon such interest or estate is created, which is enforceable against the property in the hands of ... the original promisor...." *Equitable Trust Co. v. Imbesi*, 287 Md. 249, 412 A.2d 96, 101 (1980) (citation omitted). In essence, OneWest Bank alleges that it acquired the deed of trust encumbering the Clay Street property in good faith with the intent to step into the first lien position of Surepoint Lending through a specific mortgage interest, and hence, it has an equitable lien on the Clay Street property. As such, its complaint states the elements of a viable legal claim and that claim should not have been dismissed under Rule 12(b)(6).

ceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties") (quoting FED. R.CIV.P. 61, which is identical to Super. Ct. Civ. R. 61). Here, the trial court's consideration of the substance of OneWest Bank's opposition to Ms. Marshall's motion to dismiss would not have affected any substantial right of the James Scott estate, and it would have avoided the extreme remedy of ignoring OneWest Bank's filing. Moreover, such consideration would have been consistent with the mandate of Super. Ct. Civ. R. 1 that the rules of civil procedure "be construed and administered to secure the just, speedy, and inexpensive determination of every action."

In addition, OneWest Bank made a claim of equitable subrogation in Count III of its complaint, indicating in paragraph 30 that UMG's "refinance loan was intended to be secured by [its deed of trust]"; and Paragraph 31 explains that "[p]roceeds from the refinance settlement were disbursed in the amount of $192,737.44 to the holder of the [d]eed of [t]rust originally secured by Surepoint Lending." Furthermore, Paragraph 32 alleges that "[t]he UMG loan proceeds were disbursed and the loan payoffs were made in reliance of the discharge of the prior lien against the [Clay Street] [p]roperty in reliance of UMG, and its successors in interest, acquiring and enjoying a superior lien position against the [Clay Street] [p]roperty." However, "[t]he error in the [d]eed of [t]rust does not provide OneWest Bank with the intended first position [d]eed of [t]rust." In paragraph 36, OneWest Bank states that the doctrine of equitable subrogation permits the court to "exercise its equitable powers and declare that OneWest [Bank] is subrogated to the prior superior lien position to the extent of the amount of $192,737.44."

We conclude that OneWest Bank has alleged the elements of a legally viable claim for equitable subrogation. We addressed the doctrine of equitable subrogation in *HSBC Bank USA, N.A. v. Mendoza,* 11 A.3d 229 (D.C.2010):

> Under the doctrine of equitable subrogation, a lender who pays off a pre-existing mortgage and takes a new mortgage as security for the loan will be subrogated to the rights of the first mortgagee as against any intervening lienholders, even if the lender is on constructive notice of the existence of the junior liens. In other words, the lender steps into the shoes of the mortgagee it has paid off and receives that mortgagee's priority over subsequent liens. The

> subrogation extends to the amount paid to satisfy the earlier indebtedness.

*Id.* at 235 (footnotes omitted). OneWest Bank's verified complaint includes allegations that would satisfy the elements of equitable subrogation as set out in *Mendoza.*

The Civil Division mistakenly believed that D.C.Code § 20–105 constituted a bar against any liability of the James Scott estate, and further, that the deeds of trust were void because of a non-judicial transfer of interests in the Clay Street property; hence, the Civil Division reasoned, OneWest Bank could not have stated a legally viable claim for equitable relief through the doctrines of equitable lien or equitable subrogation. "In the District of Columbia, legal title to real property ... passes not directly to the heirs or devisees, as at common law, but rather to the personal representative of the decedent's estate." *Douglas v. Lyles,* 841 A.2d 1, 3 (D.C.2004) (quoting D.C.Code § 20–105 (2001)). "This provision 'operates to vest legal title to all a decedent's property in the personal representative,'" therefore, "appointment of a personal representative is a prerequisite to probate and distribution and precludes the possibility of non-judicial distribution.'" *Id.* (quoting *Richardson v. Green,* 528 A.2d 429, 430 (D.C. 1987)).

Here, however, James, Renaud, and Abbie Scott held the Clay Street property as tenants in common. After James Scott's death, when his one-third interest had passed to his estate and awaited the appointment of his personal representative for distribution, Renaud and Abbie Scott each encumbered their one-third interest in the Clay Street property by using it as collateral for the Surepoint mortgage loan. Later, when Renaud and Abbie Scott refinanced the Surepoint loan, Renaud and Abbie executed a deed of trust to UMG

and Renaud Scott signed a promissory note pledging his one-third interest to secure the UMG loan.

A cotenant is free to sell or encumber his or her interest in property. 7 POWELL ON REAL PROPERTY, § 50.06[4]. "A sale or encumbrance by one tenant in common of more than his or her share does not bind the others." *Id.* Hence, neither the Surepoint nor the UMG loan could bind James Scott's one-third interest in the Clay Street property at the point in which it was secured. Nevertheless, "[w]hile a mortgage granted by a single tenant in common covers only the mortgagor's interest, the mortgagee also has a lien on the increased value of the entire cotenancy caused by improvements obtained with mortgagee's funds." *Id.* Thus, assuming that improvements were made to the Clay Street property with the loan proceeds, and even assuming a defect in UMG's deed of trust, as UMG's alleged successor in interest, OneWest Bank "c[ould] receive an equitable lien for the value of improvements that were made … in good faith" with its loan funds. *M.M. & G., Inc. v. Jackson,* 612 A.2d 186, 191 (D.C.1992) (citations omitted). OneWest Bank avers that James Scott's one-third interest in the Clay Street property benefitted from the UMG loan that paid off the Surepoint mortgage loan, and that one third interest would be subject to OneWest Bank's equitable lien.

Furthermore, even assuming that Renaud and Abbie Scott sought to convey a one hundred percent interest in the Clay Street property when they obtained the Surepoint and UMG mortgage loans, or assuming that the estate benefitted from the Surepoint and UMG/IndyMac/OneWest Bank loans, OneWest Bank could rely on the doctrine of after-acquired title to demonstrate that it had an equitable lien on James Scott's estate's one-third interest and that interest would pass to Abbie Scott at the end of the probate process, thus giving Renaud and Abbie Scott all of the interest in the Clay Street property and allowing OneWest Bank to proceed to foreclosure. "The doctrine of after-acquired title holds that if a grantor purports to transfer ownership of real property to which he lacks legal title at the time of the transfer, but subsequently acquires legal title to the property, the after-acquired title inures, by operation of law, to the benefit of the grantee." *Id.* at 190; *see also Ackerman v. Abbott,* 978 A.2d 1250, 1254 (D.C.2009); *Douglas, supra,* 841 A.2d at 5. In short, OneWest Bank stated the elements of legally viable claims for equitable subrogation and equitable lien or equitable title. Whether they can prevail on those claims is not a question for these appeals.[5]

To the extent that the Civil Division purported to act on OneWest Bank's claims against Renaud and Abbie Scott by declaring UMG's deed of trust, and hence OneWest Bank's security interest, void, that ruling is based upon a misapprehension of the law.[6] Moreover, since Ms.

---

**5.** As Judge Clark recognized in denying OneWest Bank's motion for summary judgment without prejudice, at least the following issues must be addressed: "(1) whether OneWest Bank is a successor-in-interest to UMG Mortgage, LLC, and (2) whether [OneWest Bank] has a valid claim or interest in the [Clay Street] property." Notwithstanding the doctrine of after-acquired title, it remains unclear whether the estate's one-third interest in the Clay Street property will in fact pass to Abbie Scott, or whether Abbie Scott can demonstrate that she mortgaged only her one-third interest, or whether the estate's one-third interest will have to be liquidated and used to cover claims against, or expenses of, the estate.

**6.** Similarly, Judge Christian's denial of OneWest Bank's motion to alter or amend was based on Judge Clark's grant of Ms. Marshall's Rule 12(b)(6) motion to dismiss and its

Marshall's Rule 12(b)(6) motion was filed only on behalf of the James Scott estate, it could not have impacted OneWest Bank's claims against Renaud and Abbie Scott. In addition, because the Probate Division's decision denying OneWest Bank's motion to distribute estate funds to Abbie Scott was based on the Civil Division's ruling, we would be constrained to vacate it, assuming that the probate case is properly before us.[7]

Accordingly, for the reasons stated above, we vacate the Civil Division orders and remand these cases to the Superior Court for further proceedings.[8]

*So ordered.*

belief that "no new information nor law ... persuaded the [Civil Division] to change [the dismissal ruling]," and hence, it was bound by that ruling. But, as we indicated, that ruling was based upon a misapprehension of the law.

7. Given our disposition of the Civil Division appeal, and our expectation that the Probate Division will vacate its order in light of that disposition, we see no need at this point to address the Probate Division appeal.

8. Since the Civil Division case and the Probate case are related, the Superior Court may wish to consolidate them in the Probate Division.