(No. 12743.—Judgment affirmed.)

THE STEPHENS ENGINEERING COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(ADA THOMAS *et al.* Defendants in Error.)

*Opinion filed October 27, 1919—Rehearing denied Dec. 4, 1919.*

1. WORKMEN'S COMPENSATION—*when injury arises out of and in the course of employment.* An injury to an employee caused by a fall from a fire-escape which he attempted to descend for the purpose of reporting to the time-keeper at the close of his day's work arises out of and in the course of his employment, where it was customary for the workmen to use the fire-escape as a means of descent and where such use was known to the employer.

2. SAME—*casualty company in paying an award acts as agent of the insured employer.* Where an employer is insured against accidents to employees, a casualty company, in making payments of an award to beneficiaries for the death of an employee, acts as the agent of the employer.

3. SAME—*when the date of a receipt does not show date of last payment.* The date of a receipt is not conclusive of the date of the last payment on an award to a beneficiary for the death of an employee, where the receipt was dated when the last check was mailed to the beneficiary by the casualty company insuring the employer but was not signed until several days later, when the check was received.

4. DEBTOR AND CREDITOR—*receipt of a check is not payment of debt.* The receipt of a check is not payment of a debt until the check is honored, unless accepted as payment.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

FRANCIS H. McKEEVER, (CHARLES GOODMAN, of counsel,) for plaintiff in error.

T. A. SHEEHAN, for defendants in error.

Mr. JUSTICE STONE delivered the opinion of the court:

The circuit court of Cook county affirmed an award of compensation by the Industrial Commission to the defendants in error, Ada Thomas and Edward E. Thomas, for injuries received by Ernest J. Thomas, resulting in his death.

Plaintiff in error urges upon review that the injury resulting in the death of Thomas did not arise out of and in the course of his employment and that no written claim for compensation was made within six months after the injury nor within six months after the last payment of compensation, and that, although compensation was paid by a casualty company up to the time when it became defunct, such payments were without the knowledge or authority of plaintiff in error.

The deceased was prior to his injury employed by the plaintiff in error as a carpenter to make repairs and remodel a grain elevator owned by the Cragin Elevator Company at Cragin, Illinois, consisting of two buildings known as the "A" house and "B" house. A fire-escape extended from the ground to the bin-floor of the "A" house along the side of the building and consisted of a ladder structure. At the time of the injury the deceased was employed on the bin-floor of the "A" house. This floor was about seventy-five feet from the ground. A doorway on the bin-floor, about six feet wide and eight feet high, opened through the outer wall near the fire-escape. At the top of this doorway, near the center, a pulley fastened to a block carried a rope, used for the purpose of hauling up heavy articles from the ground to the bin-floor. The landing of the

fire-escape was about three feet square and was on a level with the doorway. It was surrounded by a railing. The roof of the building extended over the fire-escape. In order to get onto the fire-escape from the doorway of the bin-floor it was necessary to go under this eave or around it by holding to the railing, which was two and one-half feet from the edge of the door. There was a winding stair in the "A" house leading to the ground from the bin-floor, which was not used, however, for the reason that it was not lighted. One method used to get up to and down from the bin-floor was over a bridge into the "B" house and then down a stairway. This bridge was even with the bin-floor. It took a few minutes longer to go by way of the bridge than by using the fire-escape. There was evidence tending to show that the railing around the fire-escape was not firm, one witness testifying that it moved from eight inches to a foot when he took hold of it. The testimony shows that both the fire-escape and the bridge were used by the employees in leaving this building. It was a rule of plaintiff in error that at the close of the day every carpenter, before leaving the premises, should report at the time-keeper's office on the ground floor by giving to the time-keeper his name and number. On March 20, 1914, about 4:30 in the afternoon, the deceased attempted to descend from the bin-floor by way of the fire-escape, presumably to report at the time-keeper's office at the close of his day's work. There was no eye-witness to the accident, but it is fair to presume from the evidence that the deceased attempted to swing around onto the fire-escape and for some reason lost his balance and fell to the ground, seizing the rope in the pulley to save himself. After his injury he was taken to the hospital, where he died as a result of the injury on the 23d day of May, 1914.

A policy was issued to plaintiff in error covering this employment by the Casualty Company of America, to whom the accident was reported within from five to seven days.

Thereafter the casualty company made payments of compensation aggregating $1661 to Ada Thomas, widow of the deceased, on account of said policy. An arrangement was made to pay her in quarterly installments rather than in weekly payments. This matter was arranged with the approval of the secretary of the Industrial Commission. After the accident Ada Thomas removed to Baird, Texas. The payments to her were made by sight draft drawn on the casualty company for the benefit of the assured, the Stephens Engineering Company, plaintiff in error. By indorsing this sight draft she drew the money at the local bank at Baird. The last money which she received on one of these sight drafts was paid to her by the local bank at Baird on February 19, 1917. Enclosed with this sight draft was a receipt to the Stephens Engineering Company in the sum of $132 for weekly wages for the period from the 17th day of November, 1916, to the 9th day of February, 1917, under the Illinois Workmen's Compensation act, being twelve weeks at $11 per week. This receipt was dated February 10, 1917, and was signed by Ada Thomas West, the widow having in the meantime re-married. The evidence shows that these receipts and sight drafts were sent by mail to the parties located at Chicago and Baird, respectively. The testimony fails to show the date upon which the above draft and receipt were mailed at Chicago. Mrs. West testified that she kept a book in which she wrote the date on which she received the check, the number of the check and the amount of the check, and that she received this check on the 19th day of February, 1917. Another sight draft similar in form, covering compensation for the months of February, March and April, and dated April 30, 1917, accompanied by a similar receipt, was mailed to Mrs. West at Baird. This draft was not honored for the reason that prior to the time when the draft was presented for payment the Casualty Company of America had become insolvent and was in course of liquidation

in the State of New York. On the 18th day of August, 1917, Mrs. West made demand on the plaintiff in error for the balance of the compensation due under the Workmen's Compensation act because of the injury resulting in the death of Ernest J. Thomas.

There is testimony in the record tending to establish that the employees of the plaintiff in error were in the habit of using the fire-escape on the elevator as a means of descent from the bin-room and that such use was known to the plaintiff in error. There is also in the record evidence tending to show that the fire-escape was a safe means of descent. It appears that the day's work of the deceased and other employees was not completed until they had descended from the bin-room and turned in their names and numbers to the time-keeper. There is, therefore, evidence in the record tending to establish that the injury arose out of and in the course of the employment of the deceased, and the Industrial Commission was justified in so finding.

It is also contended that the payments made by the casualty company to the defendants in error were without authority of the plaintiff in error. While the evidence concerning the knowledge and authority for such payments is not abundant, yet we are of the opinion that such evidence is sufficient to warrant the commission in finding that the payments were made for the plaintiff in error with its authority. There is testimony in the record, though not abstracted, tending to show that one Larson, who notified the casualty company of the accident, was the agent of plaintiff in error in the work then being done. It is impossible to conceive of a situation where a casualty company would make payment on a policy of this character without notice to the assured. In the ordinary affairs of life such a thing would scarcely happen. The casualty company, in making such payments, acted as the agent of the plaintiff in error.

It is earnestly contended on the part of the plaintiff in error that no written notice of claim for compensation was

made within six months after the accident or within six months from the date of the last payment of compensation. The last check for payment received by Mrs. West upon which she received the money was cashed by her on February 19, 1917. Upon receiving this check she signed the receipt accompanying it, dated February 10, 1917. It is urged that the receipt of this check by her was payment, and that, as shown by the receipt signed by her, such payment was made on February 10, 1917, and that as notice or demand was not served until August 18, 1917, such notice was not within six months of the date of the last payment. Even if this were to be taken as true in law it could avail plaintiff in error nothing, since on May 4, 1917, a little more than three months prior to said demand, Mrs. West received a check for additional payment, which she receipted for. This check, however, by reason of the failure of the casualty company was not paid. We do not, however, agree with counsel for plaintiff in error that the receipt of a check is payment. Such is not the rule in this State. The receipt of a check is not payment of a debt until such check is honored, unless accepted as such. (*Brown* v. *Leckie,* 43 Ill. 497; *Angus* v. *Chicago Trust and Savings Bank,* 170 id. 298.) While the receipt signed by Mrs. West was dated February 10, 1917, it was apparent that it was dated in the office of the casualty company before it was sent to her, and does not, therefore, show the actual date of the receipt of payment by her.

We are of the opinion that the Industrial Commission had jurisdiction of this claim and that the circuit court did not err in affirming the award. The judgment of the circuit court will therefore be affirmed.    *Judgment affirmed.*