## MODERN ENGINEERING & SERVICE CORPORATION v. McCREA.

### No. 365.

Municipal Court of Appeals for the District of Columbia.

Submitted April 15, 1946.

Decided May 1, 1946.

George F. Vaia, of Washington, D. C., for appellant.

Sefton Darr, of Washington, D. C. (J. E. Bindeman, of Washington, D.C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

This appeal is based upon two entirely distinct propositions, first, whether certain "back charges" were allowable under a building contract, and, second, whether the tender of a check, which was never cashed, constituted legal payment of a balance due on the contract.

Defendant in the trial court, appellee here, had a contract to install gas burners in the houses of a Federal Public Housing

Authority project in Arlington County, Virginia. Because of labor difficulties, he could not perform his contract with the general contractor, and arranged with plaintiff to do his work at a fixed price of $1,600. Plaintiff, claiming to have fulfilled its contract, demanded payment. $1,000 was paid on account by defendant. The balance of $600 is in dispute. Of this amount, defendant claims he has paid $342.17 by means of a check sent to plaintiff. Plaintiff claims it returned the check, but defendant denies he ever received it. Defendant also claims he does not owe the remaining balance of $257.83 because he was "back charged" this amount by the general contractor on account of work plaintiff should have performed to complete its contract and that plaintiff is, therefore, liable for such charges. The trial court, sitting without a jury, held in effect the "back charges" were allowable, that the balance had been paid and gave judgment for defendant. Plaintiff has appealed.

The first proposition involves four "back charges", which may be itemized as follows:

Carpentry work on screen doors which defendant claims was necessitated by the negligence of plaintiff's employees ........... $116.00
Replacing handles on certain gas ranges alleged to have been broken or stolen ................. 16.00
"Hooking up" gas ranges in the "community" building.......... 14.00
"Cleaning up" plaintiff's portion of the work after it was completed 111.83
_____
Total "back charges" ........ $257.83

The contract under which the gas ranges were installed was in the form of a purchase order signed by defendant and accepted by plaintiff. It provided that plaintiff would "pick up from roadside, carry into house, set in place, assemble, place burners" in connection with gas ranges in the project at a price of $1,600. Under the heading "special instructions", the order further provided that "it is understood that this order is being placed with you as a subcontractor for Fred J. Brotherton, Inc., for project VA–44019", and that all the terms and conditions of the government plans and specifications insofar as they related to this work were to be followed and assumed by plaintiff. It was a specific condition of the order that prompt and efficient service should be rendered and that the ranges were to be left cleaned up and in first-class operating condition.

There was ample evidence that the work included in the "back charges" was done by or on behalf of defendant and that the charges therefor were fair and reasonable. Furthermore, each of the items was within the scope of the contract. The damage to the screen doors was claimed to have been caused by the act of plaintiff's workmen in negligently leaving gas ranges near or against open doors, making possible their damage by the wind. The breaking or theft of door handles was alleged to have taken place while the ranges were in plaintiff's custody. The contract ostensibly covered all houses in the project and thus would include the community building. The government plans and specifications included cleaning up the grounds.

The trial judge, therefore, was justified in allowing these "back charges". We may not substitute our judgment on conflicting evidence for that of the trial court.[1] In consequence, we affirm that part of the judgment which disallowed $257.83 of plaintiff's claim.

Plaintiff's remaining claim for $342.17 is based upon the following circumstances: Defendant admitted owing this amount and, on November 1, 1944, wrote plaintiff a letter enclosing check for $342.17, upon which was printed a statement to the effect that the check was in full settlement of the amount owing and if it was not correct to please return it. Plaintiff's manager testified he had already told defendant that nothing less than $600 would be accepted and that he immediately placed the check in an envelope, sealed the envelope, placed his return address thereon with defendant's full mailing address, placed a three-cent stamp on the envelope and deposited the envelope in the mail. Defendant testi-

[1] Nolan v. Werth, 79 U.S.App.D.C. 33, 142 F.2d 9; Weimann v. Sheppard, D.C.Mun. App., 37 A.2d 847.

fied that he had not received the check, but he admitted that it had not been presented to his bank for payment. (The trial was held June 13, 1945, approximately seven months after the check was mailed.)

The effect of the trial court's judgment was that the amount of this check had been paid by defendant to plaintiff. This, we think, was error.

■ While a large proportion of business today is conducted through the medium of checks, the general rule is that the receipt of a check is not payment of a debt until honored, unless accepted as payment,[2] and a check is not a good tender of payment even if on a solvent bank, and need not be accepted by a creditor entitled to cash.[3] This is true particularly when, as here, the check on its face contains a condition unacceptable to the payee.

It was stated in Bombas v. Fisher, Sup., 180 N.Y.S. 449, 450, involving a closely analogous situation: "If for any reason the plaintiffs did not deposit the check, defendant was bound to keep his tender good, and, when sued, to pay the money into court. * * * Incidentally it may be noted that, except for the matter of costs, for the recovery of which by plaintiffs defendant himself has only himself to blame, defendant has not been injured, for since the check has not been deposited, and has either been returned to defendant or lost, payment may be stopped thereon."

■ In the instant case plaintiff not only did not accept the check in payment;

defendant had been notified in advance that plaintiff was claiming a larger amount. At the time of the trial more than seven months had passed since the remailing of the check, and at that time defendant's bank account had not been debited with this item; in other words, the check had not been cashed. When the case was submitted on appeal, more than a year had passed, and we may assume that if at that time the check had been debited we would have been informed accordingly. Under the Negotiable Instruments Act in effect in the District of Columbia, where a check payable at any bank or trust company doing business in the District of Columbia is presented for payment more than one year from its date, such bank or trust company may, unless expressly instructed by the drawer or maker to pay the same, refuse payment thereof, and no liability shall thereby be incurred to the drawer or maker for dishonoring the instrument by nonpayment.[4]

Under the circumstances, we deem it unnecessary to discuss the presumptions and burden of proof with respect to letters properly addressed, stamped and mailed which the addressee claims never to have received.

Our conclusion is that since defendant admitted owing plaintiff $342.17, and since plaintiff has not been paid this amount, the judgment of the trial court must be reversed with instructions to enter judgment for plaintiff for this sum, plus interest and costs.

[2] Stephens Engineering Co. v. Industrial Commission, 290 Ill. 88, 124 N.E. 869; Bergman v. Granstein, 235 Mass. 378, 126 N.E. 657; Wriggelsworth v. Lott, 307 Mich. 161, 11 N.W.2d 843, 150 A.L.R. 856.

[3] Keystone Grape Co. v. Hustis, 232 Mass. 162, 122 N.E. 269.

[4] Code 1940, § 28—1004.