## SERVICE PARKING CORPORATION v. TRANS–LUX RADIO CITY CORPORATION.

### No. 363.

Municipal Court of Appeals for the
District of Columbia.

May 22, 1946.

Rehearing Denied July 24, 1946.

Godfrey L. Munter, of Washington, D. C., for appellant.

Louis M. Denit, of Washington, D. C. (whom J. Edward Burroughs, Thomas S. Jackson, A. Leckie Cox, and Coleman L. Diamond, all of Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD, Associate Judge.

CAYTON, Chief Judge.

Defendant appeals from a judgment entered against it in the Landlord and Tenant Branch of the Municipal Court, for possession of parking lot property adjoining the Trans-Lux Theater building. The suit was originally filed by the then owner Evalyn Walsh McLean. She, however, sold the property to Trans-Lux Radio City Company which was made a party plaintiff in the action. During the trial a nonsuit was taken as to Mrs. McLean, leaving the Trans-Lux company as party plaintiff. Although Mrs. McLean was named as appellee when the appeal was brought here, she has no further interest in the case and is not actually a party to the appeal.

The action was based upon the claim (as revealed in an amended bill of particulars) that defendant owed rent in arrears totalling $70,291.66. Defendant had demanded a trial by jury; this was, however, withdrawn during the course of the trial and the case was completed and decided by the trial judge. The stenographic transcript of the trial proceedings is several hundred pages in length and we have studied it with minute care. The decision of the trial court is set out in a rather exhaustive memorandum which includes findings of fact and conclusions of law.

In April 1941, appellant as lessee entered into a written lease with Mrs. McLean under which it was to occupy the parking lot for a period of twenty years. The annual rent was fixed at $27,500. The rental for each of the first three months was to be $1600 and for all future months, $2291.66. The lease gave the lessee the right, at its own expense, to erect a building on the premises with the agreement that construction thereof "shall be begun within six months from the date this lease becomes effective." The lease also provided that while such building was being constructed "and for a period not to exceed ninety working days the rents shall be free" and "should the completion of the building or structure be delayed, caused by strikes, storms or Act of God, an additional time, in excess of the ninety days provided for herein, not to exceed thirty working days, free of rent will be granted to the lessee within which to complete such building or structure."

Incorporated into the lease was an acknowledgment that the lessor had received $9800 from lessee. This amount covered an advance payment of the first three months' rent at $1600 per month and a further payment of $5,000, which, according to the lease, was "accepted as rent paid in advance and which is to be credited against the rent to become due after the

building or structure which the lessee proposes to build has been completed."

It was agreed that at the termination of the lease term any building erected on the property would revert to and become the property of the lessor. But, as we shall see, no building was ever erected on the premises.

Among the defenses which were urged upon the trial court was that of "frustration" based upon the contention that because of wartime restrictions defendant was unable to obtain materials to construct a parking building on the lot; that the purpose and objects of the lease had become impossible of performance and that therefore the defendant could not be said to be in default. This argument, though made in appellant's brief, has been expressly abandoned in the argument before this court.

The principal defense seems to have been that the parties had agreed upon an adjustment and reduction of the rent and a modification of the lease; that defendant had tendered the amount of the reduced rent which the lessor had refused, and that no rent was owing. The evidence revealed that from the time of the commencement of the lease until December 1943, lessee had paid and lessor had accepted a total of $46,800. Checks totalling an additional $27,527.15 were tendered and refused.

According to the contention of the defendant the parties agreed in March 1944 to modify the lease by reducing the rental, because of the inability of defendant company to construct a parking center building on the lot and because of its curtailed receipts. Defendant contended that the sums paid through December 1943 were to be accepted by lessor as rent in full to that time; and that the lessee was to pay only the carrying charges on the property, consisting of taxes and interest, thenceforth and until six months after the end of the war, at which time the terms of the original lease were again to go into effect. Plaintiff specifically denied that any such new agreement was ever made.

To support its position defendant offered testimony of conversations between a Mr. Miller and a Mr. Lachman, two of its officials, and a Mr. Bono, who was then attorney for Mrs. McLean, in which conversations they claimed to have proposed to him the plan for reduction in rent on the basis above stated. They testified that Bono agreed to present the proposal to Mrs. McLean and a few days later reported that she had authorized him to accept the proposition; that they made no payments under the new arrangement at that time because Bono stated he desired none in view of his pending efforts to have the tax assessment reduced. They testified that after such reduction had been accomplished the entire new agreement was to have been put into writing but that this was never done because Bono next notified them that the lessor wished possession of the property.

The essential parts of this testimony were denied by Bono. His testimony is contained in some eighty pages of the record and we cannot attempt even to summarize it here. The general effect of it, however, was that there had never been an agreement to cancel the back rent; that they talked about adjusting the rent but never got anywhere; that they never reached a definite agreement as to past or future rents; that he agreed to take up with Mrs. McLean the matter of adjusting the rent and she indicated a willingness to do so; that no definite plan had been worked out but that he was to attempt to get a concrete proposition from Mrs. McLean; but that in about a month he wrote them that Mrs. McLean was demanding possession. He denied telling defendant's officials "that the whole thing was settled" and insisted that though Mrs. McLean had said she would enter into a new arrangement the details had not been worked out. He also testified that the checks at the rate of $1600 per month had been received only on account and that the understanding was that when the building was constructed the back rent would be paid up. He denied telling defendant's officials that Mrs. McLean had agreed to treat all back rent as paid in full.

Thus we see that at best the testimony for defendant was in conflict with that of Bono. In some aspects it is true that there may seem to have been some support in

what Bono said for defendant's position as to future rent. On the other hand Bono was emphatic in his denial that any agreement was ever reached as to past or future rents.

With the better opportunity which the trial court had to judge the witnesses Miller and Lachman [1] it found that the discussions had never ripened into a final agreement amounting to a modification of the lease. With the evidence reasonably lending itself to differing conclusions we cannot say either that there was no evidence to support such finding or that it was plainly wrong. Nolan v. Werth, 79 U.S. App.D.C. 33, 142 F.2d 9; Modern Engineering and Service Corporation v. Mc-Crea Equipment Co., D.C.Mun.App., 46 A. 2d 767.

Defendant assigns as error the refusal of the trial court to discontinue or stay the proceedings below when it was shown that after this action was commenced plaintiff McLean filed suit involving this same property in the District Court of the United States for the District of Columbia for ejectment and for arrears of rent. It is conceded that before the trial of this case counsel for the new owner filed in the District Court suit a præcipe withdrawing or abandoning its claim for ejectment or possession. Thus the litigation between the parties involved in the Municipal Court a claim for possession only and in the District Court a claim for arrears in rent. This we think was not improper. The Municipal Court has jurisdiction to try actions involving possession of real estate. Code 1940, § 11—735. Nor is a plaintiff required to join his claim for rent with his possessory action. And his failure so to join his rent claim does not prevent him from suing separately to recover the rent. Code 1940, § 16—513. That section of the Code provides a summary method of obtaining possession of real property and is a statutory proceeding substituted for the ancient remedy of ejectment.[2] Thus as we see it there was nothing to require the trial court to abate this action for possession. There is here no question as to priority of jurisdictions; for if the amount involved were within the jurisdiction of the Municipal Court there is no statute or rule of court which would have prevented plaintiff from suing for possession in the Landlord and Tenant Branch and suing separately as in debt for the rent in arrears in another branch of the same court. There would therefore seem to be no reason, statutory or logical, to prevent the course of action which was here pursued.

Error is assigned in the exclusion of certain evidence. One Miller, an official of defendant company, was called as a witness for the plaintiff to produce certain checks pursuant to a subpœna. He was not permitted on cross-examination to testify as to conversations with Bono regarding checks sent after July 1942. The trial judge ruled, and we think properly, that such testimony was beyond the scope of the direct examination. Moreover, when called as a witness for defendant Miller did testify at some length on the same subject. There was no error in this ruling.

Miller was also not permitted to testify as to whether in his opinion defendant owed any rent to plaintiff. As to this the trial judge properly ruled that the question called for a legal conclusion. A similar ruling was made on a question put to Miller as to why the building had not been erected. But there were later admitted in evidence certain Presidential proclamations declaring an unlimited national emergency, and an order of the War Production Board prohibiting the construction of non-essential buildings. The ruling was proper.

Also the trial judge excluded evidence as to the gross income of the parking lot, whether defendant would have entered into the lease without the right to erect a building, and whether the income of the lot without a building would be sufficient to pay an annual rental of $27,500. But the trial judge did later admit in evidence a

---

[1] Mr. Bono did not testify in person at the trial; but by stipulation a stenographic transcript of his testimony at a former trial was received and agreed to be considered as his testimony.

[2] Shipley v. Major, D.C.Mun.App., 44 A.2d 540.

statement of profit and loss which had been prepared by defendant and submitted to Mr. Bono. There was no error in excluding the evidence referred to.

■ Appellant also claims it was error to exclude a letter from Miller to officers of defendant company in Detroit, written in April 1944 and reciting Miller's version of his conversation with Bono. Appellant refers to this letter as a "corporate record." Such it probably was, in a loose sense. But as we see it, it was really nothing more than an interoffice communication addressed "Dear Dora and Harry" constituting a report from the general manager to his superiors, and was not admissible as a corporate record. Nor is there any other theory on which it would be admissible, for there was no showing that its contents had ever been made known to plaintiff.

■ Appellant contends that the owner is estopped to enforce the lease or claim possession because Mrs. McLean had waived her rights under the lease and because defendant had changed its position, relying upon the assurances of Mr. Bono referred to above. But as we have already said the trial judge found that there had been no actual agreement to accept a lesser rent than that provided in the lease. He also found that in making payments on account defendant was only doing that which it was legally bound to do especially when it had been told repeatedly that Mrs. McLean was expecting the back rent to be paid in full. These circumstances certainly do not spell out a case either of estoppel or waiver.[3]

■ That leaves for our consideration an error assigned as to the failure of the court below to make special findings as to the exact amount of rent due from defendant. Appellant cites Rule 48(b) of the trial court which provides that when requested the trial court "may find the facts specially and state separately its conclusions of law * * *." It seems to us that in preparing and filing his very complete memorandum opinion the trial judge complied with this rule.

Moreover, he specially found as a fact that a total of $46,800 had been paid as rent and accepted on account through December 1943; also that for the same period $71,258.14 was due under the terms of the lease; also that for the same period there had been paid $24,458.14 less than was due under the lease, and that the above figures included the $5,000 paid as advance rent. There was no dispute that under the trial court's findings a monthly rent of $2,291.66 was due from January 1, 1944. A calculation submitted by the lessee was carried through to November 30, 1945, but the plaintiff's amended bill of particulars which was filed in open court on August 21, 1945, only claimed rent was due through August 1945 (the rent being payable in advance on the first of the month). Under the court's findings, therefore, simple arithmetic showed that as of the date of the filing of the amended bill of particulars $70,291.34 was due on account of rent.

■■ The calculations submitted by the lessee claimed an additional credit of $6,000 on account of a certain "Major assignment." The basis urged by lessee for the allowance of this credit was that Mrs. McLean owed John J. Major $9,000 for negotiating the lease, that $3,000 of this amount had already been paid, and that Mr. Major had assigned his claim for the balance of $6,000 to Nathan V. Miller, an officer of lessee company, which sum was to be paid by deducting $100 per month after the $27,500 annual rental came into effect. The testimony was undisputed that the amount of this assigned commission was not to go to the lessee corporation but to its officers personally. While the assignment directed that the payments be deducted from the rent; it also showed on its face that such payments were to be made to Mr. Miller as an individual. Under the circumstances, if the trial judge had made a special finding on this point, he could only have found against the lessee; hence the lessee has not been harmed by the failure to make the finding. The assignment running not to the lessee but to one or more of its officers, it could not be set up as a legal claim by the lessee against the lessor.

---

[3] See Bowen v. Howenstein, 39 App. D.C. 585.

And we need not speculate as to the outcome of any claim the individuals may make under the assignment.

In the interest of clarity and in order to avoid confusion as to the amount necessary to satisfy the judgment for possession, we think the judge's finding as to the amount of rent due should be shown in the minute entry of judgment. Accordingly, we order that the judgment below be modified to show that the judgment for possession was entered for nonpayment of rent in the sum of $70,291.34, which sum was due for rent through August 1945. As so modified the judgment will be

Affirmed.