*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CV-749

APRIL J. WARD and JAMES L. SCALES, APPELLANTS,

V.

WELLS FARGO BANK, N.A., APPELLEE,

and

No. 12-CV-1626

JAMES L. SCALES and APRIL J. WARD, APPELLANTS,

V.

WACHOVIA MORTGAGE PRENTICE HALL CORPORATION SYSTEM, ET AL., APPELLEES.

Appeals from the Superior Court
of the District of Columbia
(LTB-11922-10 and CAB-5029-10)

(Hon. Robert I. Richter, Hon. Anita Josey-Herring, Hon. Anthony Epstein, Hon. Natalia M. Combs Greene, Hon. A. Franklin Burgess, Jr., and Hon. Stephanie Duncan-Peters, Trial Judges)

(Argued September 11, 2013                    Decided April 17, 2014)

*Ian Stumpf* for appellants.

*Azer Akhtar* for appellee Wells Fargo Bank, N.A. in No. 12-CV-749.

*Michael S. Barranco,* with whom *Sarah E. Meyer* was on the brief, for appellee Wells Fargo Bank, N.A., in No. 12-CV-1626.

*Azer Akhtar* for appellee Rosenberg & Associates, LLC in No. 12-CV-1626.

Before EASTERLY and MCLEESE, *Associate Judges*, and PRYOR, *Senior Judge*.

MCLEESE, *Associate Judge*: Appellants James L. Scales and April J. Ward, who are married, purchased a residence together. After they defaulted on two loans, appellee Wells Fargo Bank, N.A. foreclosed on the residence. Wells Fargo also filed an action for possession of the residence. Mr. Scales and Ms. Ward filed a separate action challenging the foreclosure in Superior Court, alleging numerous claims against Wells Fargo and appellee Rosenberg & Associates, LLC ("R&A"), a law firm that participated in the foreclosure. The trial court denied relief to Mr. Scales and Ms. Ward and entered a non-redeemable judgment of possession to Wells Fargo. We affirm.

**I.**

Except as noted, the following facts are undisputed. In April 2004, Mr. Scales and Ms. Ward purchased as tenants by the entirety a property located at 400 Orange Street, S.E., Washington, D.C. By 2006, they had two outstanding loans on the property: a $216,000 mortgage relating to the purchase of the property and

an equity line of credit ("ELOC") with a limit of $27,000. Mr. Scales and Ms. Ward obtained both loans from World Savings Bank, F.S.B. -- a predecessor in interest to Wells Fargo.[1]

Mr. Scales and Ms. Ward subsequently moved to 5907 Herring Court, Waldorf, Maryland. Mr. Scales and Ms. Ward notified Wells Fargo of their new address with respect to the mortgage, but the parties dispute whether Mr. Scales and Ms. Ward properly notified Wells Fargo of their new address with respect to the ELOC. From 2006 to 2012, Mr. Scales and Ms. Ward rented the Orange Street property to a tenant who paid them approximately $1700 per month.

In 2009, Mr. Scales and Ms. Ward defaulted on both loans. As a result, Wells Fargo took steps to foreclose on the property, relying solely on the default with respect to the ELOC. Wells Fargo hired R&A to initiate foreclosure proceedings. On December 8, 2009, R&A sent a notice of intent to foreclose to Mr. Scales and Ms. Ward at the Orange Street address. The 2009 notice stated that the foreclosure sale would occur on January 12, 2010.

---

[1] We hereinafter use "Wells Fargo" to also refer to Wells Fargo's predecessors in interest.

In January 2010, Mr. Scales filed a complaint in Superior Court and moved for a temporary restraining order ("TRO") and preliminary injunction to prevent foreclosure, alleging that Wells Fargo was not the proper holder of the ELOC note. Mr. Scales's TRO motion listed Orange Street as Mr. Scales's home address.

The trial court granted a TRO and cancelled the foreclosure sale, based on Mr. Scales's promise to cure the default within two days. The trial court gave Mr. Scales's case priority because the court understood from Mr. Scales that the foreclosure action involved Mr. Scales's home.

Mr. Scales failed to cure the default. As a result, the trial court granted Wells Fargo's motion to dismiss the TRO action and re-scheduled the foreclosure sale for March 23, 2010. R&A again sent notice of intent to foreclose to the Orange Street address.

On March 23, 2010, Wells Fargo purchased the property at the foreclosure sale. On March 30, 2010, Wells Fargo served a thirty-day notice to quit on Mr. Scales and Ms. Ward at the Orange Street address. The deed of sale reflecting Wells Fargo's purchase was executed on May 7, 2010, and recorded on June 30, 2010.

In May 2010, Wells Fargo filed a complaint against Mr. Scales and Ms. Ward in the Landlord-Tenant Branch of the Superior Court for possession of the Orange Street property. In July 2010, Mr. Scales and Ms. Ward filed suit against R&A and Wells Fargo in the Civil Division of the Superior Court, alleging among other things wrongful foreclosure and breach of contract.[2] Mr. Scales and Ms. Ward sought damages as well as equitable relief including set-aside of the foreclosure sale and an injunction preventing the eviction proceedings. The trial court initially consolidated the two cases.

The trial court subsequently determined that Mr. Scales and Ms. Ward had effectively asserted a plea-of-title defense in the possession action, by challenging the foreclosure in the wrongful-foreclosure action. Under the Landlord & Tenant

---

[2] As amended, the complaint alleged claims against Wells Fargo for fraudulent inducement (Count 1); fraud (Count 2); breach of contract (Count 3); intentional violation of the duty of good faith (Count 5); wrongful foreclosure (Count 6); abuse of process (Count 7); tortious interference with a contract (Count 8); violation of the D.C. Consumer Protection Act, D.C. Code § 28-3901 et seq. (2012 Repl.) (Count 9); violation of the D.C. Human Rights Act, D.C. Code § 2-1401 et seq. (2012 Repl.) (Count 10); violation of the federal Fair Housing Act, 42 U.S.C. § 3601 et seq. (2006) (Count 11); and violation of the federal Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq. (2006) (Count 12). The complaint alleged claims against R&A for breach of contract (Count 3); gross negligence (Count 4); intentional violation of the duty of good faith (Count 5); wrongful foreclosure (Count 6); abuse of process (Count 7); tortious interference with a contract (Count 8); and violations of the federal Fair Housing Act and the D.C. Human Rights Act (Counts 13 and 14).

Rules, a defendant who asserts a plea-of-title defense to an action for possession must do so in writing and must make appropriate arrangements for an "undertaking," Super. Ct. L&T R. 5 (c) (2014), which "is a form of bond used . . . to assure compensation of the plaintiff not only for lost rent during the period of litigation while the defendant occupies the premises but also for the cloud on the title and related damages and cost." *Lindsey v. Prillman*, 921 A.2d 782, 785 (D.C. 2007) (internal quotation marks omitted). The trial court ordered Mr. Ward and Ms. Scales to comply with Rule 5, but they refused to do so. The trial court therefore struck the request for an equitable set-aside of the foreclosure and severed the possession action from the wrongful-foreclosure action.

In April 2012, the trial court entered a non-redeemable judgment for possession in favor of Wells Fargo in the possession action, holding among other things that Mr. Scales and Ms. Ward did not have standing to challenge the possession action because they had not filed a plea of title and thus were "stranger[s] to the [Orange Street] property[.]"

During the pendency of the possession action, the trial court entered a protective order requiring Mr. Scales and Ms. Ward to pay $1700 per month into the court's registry. The trial court subsequently reduced the payments to $850 per

month. The trial court eventually vacated the protective order, concluding that such an order was more appropriate in a suit based on possession for non-payment of rent. By that time, Mr. Scales and Ms. Ward had paid $7015 into the court's registry. The trial court subsequently disbursed the funds to Wells Fargo.

In the wrongful-foreclosure action, the trial court first dismissed a number of the claims as barred by the statute of limitations or for failure to state a claim upon which relief could be granted. The trial court later granted summary judgment to R&A and Wells Fargo on the remaining claims.

## II.

Mr. Scales and Ms. Ward raise three challenges to the trial court's handling of the possession action. We see no basis for reversal.

## A.

First, Mr. Scales and Ms. Ward argue that the trial court should have

dismissed them as defendants in the possession action.[3]  Specifically, they argue that they were not proper defendants in that action, because they did not occupy the Orange Street property or lease it from Wells Fargo and because the trial court found that they were not challenging Wells Fargo's title to that property.  We conclude that Mr. Scales and Ms. Ward were proper defendants in the possession action.

The defendants in an action for possession must be "detain[ing] possession of real property without right, or after [their] right to possession has ceased . . . ." D.C. Code § 16-1501 (2012 Repl.).  This court does not appear to have squarely addressed the meaning of the phrase "detains possession" under § 16-1501.  It is clear, however, that an action for possession may be brought against a defendant who is not currently occupying the property at issue.  *See* D.C. Code § 16-1502 (2012 Repl.) (where defendant in action for possession cannot be found in District of Columbia, summons may be served on tenant or on person over age of sixteen residing on or in possession of premises, and "if no one is in actual possession" summons may be served by posting on property).

---

[3]  Mr. Scales and Ms. Ward were named defendants in the action that resulted in the non-redeemable judgment for possession, and the writ of restitution names Mr. Scales and Ms. Ward as defendants.

We take guidance from the law applicable to ejectment actions, because the action for possession was created to provide for "summary relief in those cases where . . . the action of ejectment would lie." *Pernell v. Southall Realty*, 416 U.S. 363, 375 (1974) (internal quotation marks omitted; ellipses in *Pernell*); *Service Parking Corp. v. Trans-Lux Radio City Corp.*, 47 A.2d 400, 403 (D.C. 1946) ("statutory [action for possession] proceeding substituted for the ancient remedy of ejectment"). Under District of Columbia law, an ejectment action may be brought against defendants who are not occupying or in actual possession of the property. *See, e.g.*, D.C. Code § 16-1101 (a)(1) (2012 Repl.) (actions in ejectment may be brought against person "actually occupying the premises claimed, either in person *or by tenant*") (emphasis added); *Spruill v. Brooks*, 68 A.2d 204, 205-06 (D.C. 1949) (action for ejectment may be brought "against anyone occupying the premises, either in person or by tenant or against any person exercising acts of ownership adversely to the plaintiff") (discussing D.C. Code § 16-501 (1940)). *See generally, e.g.*, 28A C.J.S. *Ejectment* § 48 (2014) ("Actual or personal possession or an actual occupancy or residence [by the defendant in an ejectment action] is unnecessary . . . ."); *cf. Dun-Donnelly Publ'g Corp. v. Kenvic Assocs.*, 639 N.Y.S.2d 42, 42-43 (App. Div. 1996) (primary tenant who sublet premises was in possession of property, and thus was subject to action for non-payment of rent, even though primary tenant was "not presently in physical possession of the

premises").

Under these principles, Mr. Ward and Ms. Scales were "detaining possession" of the property for purposes of Wells Fargo's action for possession. They were renting the property to a third party for $1700 a month, and thus were "occupying the premises . . . by tenant." D.C. Code § 16-1101 (a)(1). Moreover, they were prior occupants and prior title owners of the property, and in the wrongful-foreclosure action they sought to regain ownership of the property. Finally, they have repeatedly acknowledged that they were asserting a "possessory interest" in the property. We conclude that Mr. Scales and Ms. Ward were proper defendants in the action for possession.[4]

**B.**

Second, Mr. Scales and Ms. Ward contend that the possession case should

---

[4] The trial court denied the motion to dismiss on the ground that Mr. Scales and Ms. Ward lacked standing, because they had failed to enter a plea of title and therefore were "stranger[s]" to the Orange Street property. We affirm on the alternative ground that Mr. Scales and Ms. Ward were proper defendants in the possession case. *See, e.g.*, *Obelisk Corp. v. Riggs Nat'l Bank*, 668 A.2d 847, 852-53 (D.C. 1995) ("We are not . . . limited to reviewing the legal adequacy of the grounds the trial court relied on for its ruling; if there is an alternative basis that dictates the same result, a correct judgment must be affirmed on appeal.").

have been dismissed because Wells Fargo did not have legal title when it served the notice to quit and filed the complaint. We conclude that Wells Fargo had equitable title at the time it served the notice to quit and filed its complaint, and that such title sufficed to permit Wells Fargo to take those steps.

Wells Fargo purchased the property at a foreclosure sale, and the memorandum of purchase is dated March 23, 2010. The parties do not dispute that the memorandum of purchase is a valid, enforceable contract that affects real property. Under the doctrine of equitable conversion, Wells Fargo therefore obtained equitable title to the property on March 23, 2010. *See generally Lindsey*, 921 A.2d at 786 & n.4 (valid, enforceable contract affecting real property immediately vests equitable title in purchaser). Thus, Wells Fargo had equitable title when it served the notice to quit on March 30, 2010, and when it filed the complaint for possession on May 13, 2010.[5]

---

[5] In arguing that Wells Fargo did not obtain equitable title, Mr. Scales and Ms. Ward rely solely on *HSBC Bank USA, N.A. v. Mendoza*, 11 A.3d 229 (D.C. 2010). *HSBC*, however, involves the doctrine of equitable subrogation, not equitable conversion. *Id.* at 235. The two doctrines are "distinct." *United Cmty. Bank v. Prairie State Bank & Trust*, 972 N.E.2d 324, 336 (Ill. App. Ct. 2012); *see also HSBC*, 11 A.3d at 235 ("Under the doctrine of equitable subrogation, a lender who pays off a pre-existing mortgage and takes a new mortgage as security for the loan will be subrogated to the rights of the first mortgagee as against any intervening lienholders, even if the lender is on constructive notice of the existence

(continued…)

In the District of Columbia, equitable title is sufficient to maintain an action for possession. *See Fiske v. Bigelow*, 9 D.C. (2 MacArth.) 427, 433-34 (1876) ("The objection that the plaintiff is vested only with the equitable title to the property does not lie to an action [for possession] of this kind.").[6] It follows logically that equitable title would be sufficient to take the steps prerequisite to maintaining such an action, such as serving a notice to quit where one is required. *Grimes v. Newsome*, 780 A.2d 1119, 1121 (D.C. 2001) (describing service of notice to quit as "condition precedent" to landlord's possession action) (internal quotation marks omitted). Wells Fargo thus properly initiated the action for possession.

---

(…continued)
of the junior liens. In other words, the lender steps into the shoes of the mortgagee whom it has paid off and receives that mortgagee's priority over subsequent liens. The subrogation extends to the amount paid to satisfy the earlier indebtedness.") (footnotes omitted).

[6] Mr. Scales and Ms. Ward contend that *Fiske* establishes that legal title rather than equitable title is required to maintain an action for possession. The passage they quote from *Fiske*, however, is taken in part from the portion of the opinion in which the court describes the arguments of counsel. 9 D.C. at 430. The remainder of the quote reflects the court's holding that although legal title is required in order to bring an action in ejectment, equitable title suffices to bring an action for possession, because the action for possession was intended to be "a more speedy remedy" free from some of the "technical rules" that govern the action for ejectment. *Id.* at 433-34.

## C.

Finally, Mr. Scales and Ms. Ward allege that the funds they deposited in the court's registry pursuant to the protective order should have been returned to them rather than released, because the trial court should not have imposed a protective order in the first instance. We review the entry of the protective order for abuse of discretion. *Lindsey*, 921 A.2d at 785.

Courts have broad powers to fashion equitable remedies. *See Owen v. Board of Dirs. of Wash. City Orphan Asylum*, 888 A.2d 255, 270 (D.C. 2005). "A protective order is . . . an equitable remedy designed to ensure that the landlord is not exposed to a prolonged period of litigation without rental income while the tenant remains in possession pending the outcome of a suit for possession." *Mullin v. N St. Follies Ltd. P'ship*, 712 A.2d 487, 493 (D.C. 1998) (internal quotation marks omitted). The protective order requires tenants "to deposit disputed rental payments into the registry of the court until the conclusion of the litigation." *Stets v. Featherstone*, 754 A.2d 292, 295 (D.C. 2000). The purpose of the protective order is to "preserve[] the status quo in a contested suit for possession until [the suit] can be determined on the merits." *Mullin*, 712 A.2d at 493 (internal quotation marks and alterations omitted). "Such a protective order . . . requir[es] the exercise

of sound discretion on a case-by-case basis." *Stets*, 754 A.2d at 296 (internal quotation marks omitted).

Although courts typically enter protective orders in suits for non-payment of rent where the parties have a contractual landlord-tenant relationship, we have never held that a trial court's authority to enter a protective order is limited to that context. *See Crockett v. Deutsche Bank Nat'l Trust*, 16 A.3d 949, 952-53 (D.C. 2011) ("[W]e have left open the possibility that protective orders may be appropriate in some circumstances outside of the landlord-tenant context, and have occasionally implicitly endorsed them."); *Lindsey*, 921 A.2d at 785 ("[W]e decline to say that a periodic-payment protective order can never be contemplated for use outside the typical landlord-tenant context . . . .").

We find no abuse of discretion with respect to the trial court's entry of the protective order in this case. Mr. Scales and Ms. Ward were acting as landlords, collecting approximately $1700 in rent per month from a tenant who occupied the property, but had not made payments since 2009 towards either of the two loans relating to the property. Moreover, we agree with the trial court that Mr. Scales and Ms. Ward were in substance asserting a plea of title by suing in the wrongful-foreclosure action to regain ownership of the property. The trial court therefore

could have required Mr. Scales and Ms. Ward to make payments into the court's registry as part of an undertaking pursuant to Super. Ct. L&T R. 5 (c). *See Penny v. Penny*, 565 A.2d 587, 590 (D.C. 1989) (noting "close analogy" between protective order and undertaking under L&T R. 5 (c)). Finally, for most of the duration of the protective order, Mr. Scales and Ms. Ward were only required to pay into the court's registry half the amount that they were collecting in rent from the tenant. Taken together, these circumstances provide adequate support for the trial court's decision to enter a protective order.

## III.

Mr. Scales and Ms. Ward raised fourteen claims against R&A and Wells Fargo in the amended complaint in the wrongful-foreclosure action. The trial court dismissed some claims as time-barred and some claims for failure to state a claim. The trial court granted summary judgment in favor of R&A and Wells Fargo on the remaining claims. We affirm.[7]

---

[7] In the trial court, Mr. Scales and Ms. Ward moved to strike the affirmative defenses as insufficiently pleaded. The trial court denied their motion, and Mr. Scales and Ms. Ward challenge that decision on appeal. We see no basis for relief, because Mr. Scales and Ms. Ward had adequate notice of the affirmative defenses and a full opportunity to respond before the trial court ruled on the merits. *Cf. Word v. Ham*, 495 A.2d 748, 751 (D.C. 1985) (rejecting claim that affirmative

(continued…)

**A.**

The trial court dismissed as time-barred the claims against Wells Fargo alleging fraudulent inducement (Count 1), fraud (Count 2), and consumer-protection violations (Count 9). We uphold that ruling.

The trial court concluded that the claims alleged in these counts accrued on June 26, 2006, the date on which the loans were made. Mr. Scales and Ms. Ward do not contest that ruling on appeal. The trial court further concluded that these claims "substantively state TILA [Truth-In-Lending Act] claims[,]" and Mr. Scales and Ms. Ward also do not contest that ruling on appeal." The statute of limitations for TILA claims runs "one year from the date of the occurrence of the violation." 15 U.S.C. § 1640 (e) (2012); *see, e.g.*, *Logan v. LaSalle Bank Nat'l Ass'n*, 80 A.3d 1014, 1020 (D.C. 2013). Mr. Scales and Ms. Ward filed the complaint on July 9, 2010 -- more than one year after the alleged violations. These alleged violations thus would appear to be time-barred.

---

(…continued)
defense was waived because not pleaded in answer or cross-claim, where "[a]ppellees were put on notice of the defense by appellants' opposition to their motion for summary judgment and had the opportunity to respond").

On appeal, however, Mr. Scales and Ms. Ward argue that the filing of a class-action complaint in August 2007 in the Northern District of California tolled the statute of limitations. Mr. Scales's and Ms. Ward's TILA claims, however, were time-barred as of June 2007. Thus, even if the August 2007 class action would otherwise have tolled the statute of limitations, the limitations period had already run, because class-action tolling "does not resurrect expired claims[.]" *Beavers v. Metropolitan Life Ins. Co.*, 566 F.3d 436, 441 (5th Cir. 2009).

**B.**

The trial court also dismissed as untimely the disparate-impact claims against Wells Fargo under the D.C. Human Rights Act (Count 10), federal Fair Housing Act (Count 11), and federal Equal Credit Opportunity Act (Count 12). We affirm that ruling.

Disparate-impact claims under the D.C. Human Rights Act, federal Fair Housing Act, and federal Equal Credit Opportunity Act are subject to a two-year statute of limitations. D.C. Code § 2-1403.16 (D.C. Human Rights Act) (2012 Repl.); 42 U.S.C. § 3613 (a)(1)(A) (Fair Housing Act) (2006); 15 U.S.C.

§ 1691e (f) (Equal Credit Opportunity Act) (2006).[8] The trial court ruled that the disparate-impact claims against Wells Fargo accrued on June 26, 2006, when the loans at issue were obtained. Because Mr. Scales and Ms. Ward did not file their complaint until July 9, 2010 -- more than two years after obtaining the ELOC -- their disparate-impact claims appear to be time barred on the face of the complaint. *Logan*, 80 A.3d at 1020 ("[A] court should not dismiss on statute of limitations grounds unless the claim is time-barred on the face of the complaint.").

Mr. Scales and Ms. Ward argue, however, that the limitations period was tolled under what they refer to as the "critical mass doctrine." Under that doctrine, which this court has not previously had occasion to consider, some courts have tolled the statute of limitations for discrimination claims if the alleged discrimination "could only manifest itself after a critical mass of similarly situated people experienced it, so as to bring an over-arching pattern to life." *Ramirez v. GreenPoint Mortg. Funding, Inc.*, 633 F. Supp. 2d 922, 930 (N.D. Cal. 2008); *see also Davis v. General Motors Acceptance Corp.*, 406 F. Supp. 2d 698, 706 (N.D.

---

[8] When Mr. Scales and Ms. Ward obtained the mortgages at issue in 2006, the applicable statute of limitations for the Equal Credit Opportunity Act was two years. In 2010, after the statute of limitations had run with respect to the Equal Credit Opportunity Act claim, Congress amended the statute to provide for a five-year limitations period. 15 U.S.C. § 1691e (f) (2012). Mr. Scales and Ms. Ward have not argued that the 2010 amendment revived their Equal Credit Opportunity Act claims.

Miss. 2005). We conclude that Mr. Scales and Ms. Ward have not adequately invoked the critical-mass doctrine. Neither in the complaint nor in their subsequent pleadings did Mr. Scales and Ms. Ward provide concrete support for the suggestion that they lacked information reasonably necessary to file their disparate-impact claim within two years after they obtained the loans at issue. To the extent the complaint contained concrete information on that question, that information points in the opposite direction. *See* Compl. ¶ 42 (citing statistics from 2006 in support of disparate-impact claim).

More generally, the critical-mass doctrine has been treated as an aspect of the continuing-violation doctrine. *See, e.g.*, *Ramirez*, 633 F. Supp. 2d at 930. Under the continuing-violation doctrine, the statute of limitations does not run with respect to a "continuing pattern" of alleged discrimination that involves at least some conduct falling within the limitations period. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 381 (1982). To the extent that Mr. Scales and Ms. Ward attempt to invoke the continuing-violation doctrine more broadly, as opposed to relying solely on the critical-mass doctrine, Mr. Scales and Ms. Ward have not identified any specific discriminatory conduct by Wells Fargo that extended into the limitations period. To the contrary, they conceded in the trial court that they have "no information as to when the practices last occurred . . . ." *See* Pls.' Br. in

Opp'n to Def.'s Mot. to Dismiss 4 n.1.

In sum, Mr. Scales and Ms. Ward's conclusory references to the critical-mass doctrine were not sufficient to defeat Wells Fargo's motion to dismiss. *Cf., e.g.*, *Lingad v. Indymac Fed. Bank*, 682 F. Supp. 2d 1142, 1148 (E.D. Cal. 2010) (dismissing claim as time-barred; "conclusory" allegations were "insufficient to invoke the doctrine of equitable tolling"); *Alcena v. Raine*, 692 F. Supp. 261, 270 (S.D.N.Y. 1988) (dismissing discrimination complaint as time-barred; "A conclusory allegation of a continuing violation is insufficient."); *cf. generally E-Fab, Inc. v. Accountants, Inc. Servs.*, 64 Cal. Rptr. 3d 9, 17 (Ct. App. 2007) (where claims in complaint otherwise would be time-barred, "conclusory allegation" that claims could not reasonably have been discovered earlier "will not withstand demurrer").[9]

---

[9] The two cases upon which Mr. Scales and Ms. Ward principally rely are not inconsistent with our holding in this case. *See Ramirez*, 633 F. Supp. 2d at 929-30; *Davis*, 406 F. Supp. 2d at 703-07. In both cases, the trial court denied a motion to dismiss a disparate-impact claim as time-barred, relying on the critical-mass doctrine. *Ramirez*, 633 F. Supp. 2d at 929-30; *Davis*, 406 F. Supp. 2d at 703-07. Both courts noted that the plaintiffs alleged that the defendant's discriminatory practices continued into the limitations period, and both courts stated that a pattern of discrimination can be detected only after "a critical mass of similarly situated people experience it." *Ramirez*, 633 F. Supp. 2d at 930 (internal quotation marks omitted); *Davis*, 406 F. Supp. 2d at 706. In both cases, the court's discussion does not make clear what specific allegations were made by the plaintiffs. *Ramirez*, 633 F. Supp. 2d at 929-30; *Davis*, 406 F. Supp. 2d at 698.

(continued…)

**C.**

We affirm the order granting summary judgment for Wells Fargo and R&A on the wrongful-foreclosure claim and breach-of-contract claims (Counts 3 and 6). We review de novo the trial court's grant of summary judgment. *See, e.g.*, *Trustee 1245 13th St., NW No. 608 Trust v. Anderson*, 905 A.2d 181, 183 (D.C. 2006). "Summary judgment is only appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* at 183-84 (internal quotation marks and brackets omitted). "In considering summary judgment, we view the facts in the light most favorable to the non-moving party." *Id.* at 184.

Mr. Scales and Ms. Ward allege that the foreclosure sale was illegal because Wells Fargo and R&A did not mail the 2010 notice of intent to foreclose to Mr. Scales's and Ms. Ward's correct "last known address," as required by D.C. Code § 42-815 (b)(1)(A) (2012 Repl.). R&A sent the notice to the Orange Street

(…continued)
Neither case holds or implies that a plaintiff can properly avoid dismissal of an otherwise time-barred claim simply by making conclusory references to the critical-mass doctrine. To the contrary, the court in *Davis* emphasized that its denial of the motion to dismiss was subject to reconsideration if further pleadings demonstrated that "plaintiffs cannot or do not challenge an over-arching practice to which the continuing violation doctrine would apply." 406 F. Supp. 2d at 707.

address, but Mr. Scales and Ms. Ward contend that the notice should have been sent to the residence in Maryland where they claim that they resided at the time of the foreclosure. They further allege that sending the notice to the Orange Street address was a breach of Wells Fargo's obligations under the deed of trust.

We agree with the trial court that Mr. Scales is judicially estopped from challenging the service of notice at the Orange Street property, because Mr. Scales represented during the TRO proceeding that the Orange Street property was his home.

Under the doctrine of judicial estoppel, "[i]f a party has taken a position before a court of law, . . . that party . . . [may be barred] from contradicting his earlier position [in a later proceeding]." *Brown v. M St. Five, LLC*, 56 A.3d 765, 780 (D.C. 2012) (internal quotation marks omitted). The purpose of judicial estoppel is to "[preclude] a litigant from playing fast and loose with a court of justice by changing his position according to the vicissitudes of self-interest." *Id.* (internal quotation marks and brackets omitted). We generally consider three factors in deciding whether to apply judicial estoppel:

> First, [whether] a party's later position . . . [is] clearly inconsistent with its earlier position. Second,

> . . . whether the party has succeeded in persuading a court to accept the party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled . . . . [T]hird[,] . . . whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Mason v. United States*, 956 A.2d 63, 66 (D.C. 2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)).

In this case, these factors weigh in favor of finding that Mr. Scales is judicially estopped from denying that the Orange Street property was his home. First, Mr. Scales's current claim that the Maryland property was his home in February 2010 directly conflicts with Mr. Scales's testimony during the January 2010 TRO proceeding, where Mr. Scales testified under oath that the Orange Street property was his home.[10] Mr. Scales also identified Orange Street as his address in his request for a TRO. Second, Judge Mencher's decision to grant the TRO was based, in part, on Mr. Scales's testimony that the Orange Street property was his

---

[10] Mr. Scales contends that the trial court incorrectly applied the doctrine of judicial estoppel, because Mr. Scales's statement during the TRO proceeding that the Orange Street property was his home was not a "position" that Judge Mencher "adopted." We disagree. During the TRO proceeding, Mr. Scales answered "[y]es" when asked by Judge Mencher whether the Orange Street property was his home. Judge Mencher further noted: "[t]his is your home. It's important."

home. Third, allowing Mr. Scales to change his position on appeal would impose an unfair detriment on Wells Fargo and R&A, which appropriately could rely on Mr. Scales's testimony in January 2010 when serving the foreclosure notice in February 2010. We therefore uphold the trial court's ruling that judicial estoppel foreclosed Mr. Scales's wrongful-foreclosure and breach-of-contract claims.

Furthermore, we agree with the trial court that Mr. Scales's testimony should judicially estop Ms. Ward even though she did not give that testimony and was not a party to the TRO proceedings. Mr. Scales and Ms. Ward owned the Orange Street property as tenants by the entireties, and under the circumstances Ms. Ward was in privity with Mr. Scales with respect to the property. *David v. Nemerofsky*, 41 A.2d 838, 840 (D.C. 1945) (noting that where husband and wife owned property as tenants by the entireties, the wife should be regarded as in "privity" with her husband). Judicial estoppel can apply to one who was not a party to the earlier proceeding but who is in privity with a party. *See, e.g.*, *Milton H. Green Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 998 (9th Cir. 2012) (beneficiary was judicially estopped by representation made by executor, because beneficiary and executor were in privity); *Stansbury v. Chemical Servs. Div. of Brown-Ferris Indus.*, 702 S.W.2d 758, 759 (Tex. App. 1986) (wife judicially estopped, because she was in privity with her husband).

We conclude that it was appropriate in the circumstances of this case for the trial court to treat Ms. Ward as judicially estopped by her husband's statements. Although she was not a party to the TRO action, Ms. Ward benefited from Mr. Ward's statement that the Orange Street property was his home, which delayed the foreclosure of property Mr. Scales and Ms. Ward jointly owned. We therefore affirm the trial court's grant of summary judgment in favor of Wells Fargo with respect to the wrongful-foreclosure and breach-of-contract claims.

**D.**

Finally, we affirm the trial court's dismissal of the disparate-impact claims against R&A under the Fair Housing Act (Count 13) and D.C. Human Rights Act (Count 14) for failure to state a claim.

To state a disparate-impact claim, the plaintiffs must "identify a specific policy or practice which the defendant has used to discriminate . . . ." *Garcia v. Johanns*, 370 U.S. App. D.C. 280, 288, 444 F.3d 625, 633 (2006) (assuming arguendo that disparate-impact doctrine applies under Equal Credit Opportunity Act). *Cf. Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241 (2005) (affirming grant of summary judgment against plaintiff in age-discrimination case resting on

disparate-impact theory; "[I]t is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities.") (internal quotation marks omitted); *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 373 n.36 (D.C. 1993) ("Under a disparate impact theory, . . . there is a need to show a causal connection between the disparity and some identifiable employment practice."). "To withstand a . . . motion [to dismiss], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Bare allegations of wrongdoing that are no more than conclusions are not entitled to the assumption of truth, and are insufficient to sustain a complaint. [A] formulaic recitation of the elements of a cause of action will not do . . . ." *Logan*, 80 A.3d at 1019 (internal quotation marks and citations omitted).

Mr. Scales and Ms. Ward failed to state a disparate-impact claim against R&A under either the Fair Housing Act or the D.C. Human Rights Act. The complaint makes a number of specific allegations about R&A's conduct: (1) R&A told Mr. Scales that attempting to cure the ELOC would be "futile" because R&A would "find some other way to foreclose on the [Orange Street] property"; (2)

R&A lacked policies to ensure that foreclosure notices reach property owners; (3) R&A mismanaged "essential documents"; (4) R&A sent foreclosure notices to wrong addresses; (5) R&A failed to read promissory notes before foreclosure; and (6) R&A relied on "unsupervised" non-lawyers. The complaint also alleges in conclusory fashion that "the combined effect of such inexcusable failings has a disparate impact on African-Americans in the District of Columbia."

These allegations are not sufficient to state a disparate-impact claim. Many of the allegations rest on the premise that R&A sent the foreclosure notice to an incorrect address, but we have already held that Mr. Scales and Ms. Ward are judicially estopped from claiming that they did not reside at the Orange Street property for purposes of the wrongful-foreclosure case. The complaint does not identify any specific support for a conclusion that any of the other specific acts alleged had a disparate impact on African Americans. For example, the complaint alleges that African-Americans suffer from a higher rate of foreclosure than Caucasians in metropolitan areas "similar to the District of Columbia," but they provide no basis for the conclusory allegation that R&A's specific conduct had a disparate impact on African-Americans. Courts considering comparable complaints have concluded that dismissal was appropriate. *See Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014) (dismissing complaint for failure

to state plausible disparate-impact claim; "[t]here are no factual allegations tending to show a causal link between the challenged testing protocols and a statistically significant racial imbalance" in police and fire departments); *Elgaghil v. Tarrant Cnty. Junior Coll.*, 45 S.W.3d 133, 143-44 (Tex. 2000) (holding employee failed to establish prima facie case of disparate impact, because among other things employee "offered no evidence other than his bare allegation that the business practice in question had an adverse [e]ffect on anyone other than himself").

In sum, we affirm the trial court's dismissal of the disparate-impact claims against R&A.

For the foregoing reasons, the judgment of the Superior Court is

*Affirmed.*